IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SWITCHBOARD APPARATUS, INC. D/B/A SAI ADVANCED POWER SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHANE WOLFRAM, <br><br> Defendant, | Case No. 1:21-cv-01665 |

**DEFENDANT SHANE WOLFRAM'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS COUNTS II AND III OF THE AMENDED COMPLAINT**

Defendant Shane Wolfram ("Wolfram") submits this Memorandum in Support of his Motion to Dismiss Counts II and III of the Amended Complaint (the "Motion"). Am. Compl., ECF No. 10. For reasons presented below, Plaintiff Switchboard Apparatus, Inc. d/b/a SAI Advanced Power Solutions, Inc. ("SAI") has not stated valid claims in Counts II and III, and these claims should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ............................................................................................................ ii

**INTRODUCTION** ........................................................................................................................... 1

**FACTUAL BACKGROUND** ......................................................................................................... 2

**I.**     **Allegations in the Complaint** ............................................................................................ 2

**LEGAL STANDARD** ..................................................................................................................... 3

**ARGUMENT** ................................................................................................................................... 4

**I.**     **SAI'S TRADE SECRETS MISAPPROPRIATION CLAIM, COUNT II, IS UNSUPPORTED BY ANY ACTUAL FACTS AND SHOULD BE DISMISSED.** .................................................................................................................... 4

    **A.**  **Count II Should Be Dismissed because SAI Has Not Alleged a Valid Trade Secret Under the ITSA**. .......................................................................... 4

        **1.**   SAI has not sufficiently alleged information that "is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use" ............................................ 4

        **2.**   SAI has not sufficiently alleged how it safeguards its trade secrets. ......................................................................................................... 7

    **B.**  **Count II Should Be Dismissed because SAI Has Not Alleged any Facts that show Actual Trade Secrets Misappropriation** ........................................... 9

        **1.**   SAI fails to identify which specific trade secrets were stolen. ............ 10

        **2.**   SAI fails to allege the circumstances of a purported trade secrets theft. ........................................................................................ 10

        **3.**   SAI does not allege that Wolfram acted with "improper means." .................................................................................................. 11

    **C.**  **Count II Should Be Dismissed Because SAI Has Not Alleged that Wolfram Used any of SAI's Trade Secrets** ........................................................ 13

**II.**    **SAI'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED** ....................................................................................................................... 13

    **A.**  **SAI's Claim for Breach of Fiduciary Duty Is Preempted by the ITSA**. ....... 13

    **B.**  **SAI Has Failed to Adequately Plead Its Claim for Breach of Fiduciary Duty**. ................................................................................................................... 14

**CONCLUSION** ............................................................................................................................... 15

29234981v4

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab'ys v. Chiron Corp.*,
 No. 97 C 0519, 1997 WL 208369 (N.D. Ill. Apr. 23, 1997)...................................................13

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
 364 F. Supp. 3d 888 (N.D. Ill. 2019) .................................................................................13, 14

*Adams v. City of Indianapolis*,
 742 F.3d 720 (7th Cir. 2014) .................................................................................................3

*Allied Benefit Sys., Inc. v. Ramirez*,
 188 F. Supp. 3d 704 (N.D. Ill. 2015) ....................................................................................10

*Alpha Sch. Bus Co. v. Wagner*,
 910 N.E.2d 1134 (Ill. App. Ct. 2009) ...................................................................................13

*Arcor, Inc. v. Haas*,
 842 N.E.2d 265 (Ill. App. Ct. 2005) .......................................................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................3

*Carpenter v. Aspen Search Advisers, LLC*,
 No. 10 C 6823, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011)..............................................5, 14

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*,
 799 F. Supp. 2d 846 (N.D. Ill. 2011) .....................................................................................8

*Fleetwood Packaging v. Hein*,
 No. 14 C 09670, 2015 WL 6164957 (N.D. Ill. Oct. 20, 2015) ..........................................5, 11

*GlobalTap LLC v. Elkay Mfg. Co.*,
 No. 13 C 632, 2015 WL 94235 (N.D. Ill. Jan. 5, 2015) ........................................................5

*Indus. Packaging Supplies, Inc. v. Channell*,
 No. 18 CV 165, 2018 WL 2560993 (N.D. Ill. 2018).............................................................12

*Int'l Quality & Productivity Ctr./Penton Learning Sys., LLC v. Eck*,
 No. 98 C 3146, 1999 WL 35353 (N.D. Ill. Jan. 11, 1999) ....................................................14

*IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*,
  191 F. Supp. 3d 790 (N.D. Ill. 2016) ...................................................................................13

*JMP-Newcor Int'l, Inc. v. Sourcing Sols., Inc.*,
  No. 96 C 8150, 1996 WL 754131 (N.D. Ill. Dec. 31, 1996) ......................................................6

*Kim v. Dawn Food Prods., Inc.*,
  206 F. App'x 558 (7th Cir. 2006) .........................................................................................4

*Label Printers v. Pflug*,
  564 N.E.2d 1382 (Ill. App. Ct. 1991) .....................................................................................6

*Lear Siegler, Inc. v. Glass Plastics Corp.*,
  No. 81 C 3433, 1987 WL 15749 (N.D. Ill. Aug. 12, 1987) .......................................................5

*Liion, LLC v. Vertiv Grp. Corp.*,
  No. 18 C 6133, 2019 WL 1281977 (N.D. Ill. Mar. 20, 2019) ...................................................9

*Opus Fund Services (USA) LLC v. Theorem Fund Services, LLC*,
  No. 17 C 923, 2018 WL 1156246 (N.D. Ill. Mar. 5, 2018) ..................................................8, 9

*Packaging Corp. of Am., Inc. v. Croner*,
  419 F. Supp. 3d 1059 (N.D. Ill. 2020) ....................................................................11, 12, 13

*Plastic Film Corp. of Am. v. Achilles USA, Inc.*,
  No. 06 C 5583, 2007 WL 9814704 (N.D. Ill. Sept. 26, 2007) ...................................................6

*Prominence Advisors, Inc. v. Dalton*,
  No. 17 CV 04369, 2017 WL 6988661 (N.D. Ill. Dec. 18, 2017) ............................................11

*Segerdahl Corp. v. Ferruzza*,
  No. 17 cv 3015, 2018 WL 828062 (N.D. Ill. Feb. 10, 2018) .........................................5, 6, 10

*Starsurgical, Inc. v. Aperta, LLC*,
  40 F. Supp. 3d 1069 (E.D. Wis. 2014) ..................................................................................8

*Stenstrom Petrol. Servs. Grp., Inc. v. Mesch*,
  874 N.E.2d 959 (Ill. App. Ct. 2007) ......................................................................................6

*Sysco Corp. v. Katz*,
  No. 13 C 5477, 2013 WL 5519411 (N.D. Ill. Oct. 3, 2013) ....................................................14

*Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*,
  No. 93 C 0556, 1993 WL 358148 (N.D. Ill. Sept. 4, 1993) .......................................................5

*Thomas & Betts Corp. v. Panduit Corp.*,
  108 F. Supp. 2d 968 (N.D. Ill. 2000) ...................................................................................14

*Trailer Leasing Co. v. Assocs. Com. Corp.*,
   No. 96 C 2305, 1996 WL 450801 (N.D. Ill. Aug. 8, 1996) ...................................................... 6

*Woodard v. Harrison*,
   No. 08–2167, 2008 WL 4724370 (C.D. Ill. Oct. 24, 2008) ...................................................... 13

**Statutes**

765 ILCS 1065/2(a) .................................................................................................................. 9

765 ILCS 1065/2(b) .................................................................................................................. 9

765 ILCS 1065/2(d) ........................................................................................................... 4, 6, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .............................................................................. 3, 9

**INTRODUCTION**

SAI seeks to prevent Wolfram from pursuing his livelihood and seeking a fresh start with E&I Engineering Corporation ("E&I"), his new employer, despite Wolfram giving SAI almost a decade of loyalty and dedicated work. In order to accomplish this goal, SAI has sought to enforce dated restrictive covenants, and for purposes of this Motion, brought allegations under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA") (Count II), and a common law breach of fiduciary duties claim (Count III), despite failing to sufficiently describe the existence of a trade secret, any allegations of misappropriation or actual use, or any other facts describing how Wolfram breached any fiduciary duties. Thus, at its heart, SAI's case is one that seeks to enforce a burdensome noncompete against Wolfram, which is disfavored in Illinois[1], and this Court should reject any attempt by SAI to disguise this reality with other thinly-pled claims, such as "trade secret misappropriation" or a "breach of fiduciary duties."

The Amended Complaint, stripped of its legal conclusions, fails to allege actual facts showing the existence of a trade secret that has actually been misappropriated, which is remarkable because Wolfram resigned from SAI on May 15, 2020, almost a year ago. Presumably, if Wolfram had actually stolen trade secrets, SAI should have been able to allege actual allegations regarding such theft and the damages it caused after having ten months to craft such a story. Furthermore, SAI's breach of fiduciary duties claim is preempted by the ITSA because it rests upon the same allegations as SAI's misappropriation claim, and, alternatively, Count III fails to state a valid claim. Finally, as this Court analyzes the above arguments, it should keep in mind that SAI

---

[1] Wolfram recognizes that the adjudication of SAI's unreasonable restrictive covenants is proper at the summary judgment stage. The purpose of this Motion is to illustrate why this case is nothing more than one that revolves around a noncompete, and that SAI's attempt to bring other claims to disguise this fact is meritless where no actual facts have been alleged regarding these claims.

expressly allowed Wolfram (when he resigned[2]) to work for his current employer, E&I, and then waited to sue almost *seven months* after Wolfram resigned from SAI, and well after he started working for E&I, and yet now seeks remedies under its Amended Complaint against Wolfram without any attempt to bolster its claims with facts. SAI's attempt is nothing more than an attempt to restrain lawful competition. Wolfram now attempts to move on with his life, and this Court should reject SAI's deficiently-alleged claims and allow him to do so.

## FACTUAL BACKGROUND

### I. Allegations in the Complaint.

SAI designs, manufactures, and supplies electrical switchgear. Am. Compl. ¶ 7. It hired Wolfram as Vice President of Sales in August 2011. *Id.* ¶ 9. Nearly a year later, on July 25, 2012, Wolfram signed the Confidentiality, Non-Competition and Non Solicitation Agreement ("Agreement") with SAI, a copy of which is attached to SAI's Amended Complaint. *Id.* ¶ 15.

On October 2, 2019, SAI submitted a proposal to Holder Construction, LLC for SAI to supply switchgear for a data center located in Silicon Valley for Stack, Inc. (the "Stack SV Project"). *Id.* ¶¶ 22, 24. In February 2020, SAI learned it was awarded the Stack SV Project. *Id.* ¶ 26. In April and May 2020, SAI submitted proposals to supply switchgear for data centers in Manassas, Virginia (the "Cloud Manassas Project") and Portland, Oregon (the "Stack Portland Project"). *Id.* ¶¶ 31-36. E&I was awarded the Cloud Manassas Project, the Stack Portland Project, and the Stack SV Project. *Id.* ¶¶ 57, 67, 70.

On May 15, 2020, Wolfram tendered his resignation from SAI, effective May 29, 2020. *Id.* ¶ 38. On May 28, 2020, Wolfram and SAI executed a separation agreement (the "Separation Agreement") which is attached to SAI's pleadings. *Id.* ¶41. The Separation Agreement expressly

---

[2] As SAI admits, Wolfram did not abruptly resign from SAI but rather did the proper thing: he gave two weeks' notice of resignation on May 15, 2020, and his last day was on May 29, 2020. Am. Compl. ¶ 38, There are no allegations that Wolfram covertly left SAI in a manner that can infer improper means.

2

provides that **SAI "agrees to waive its objection to [Wolfram] departing SAI and going to work for a definitive competitor (E&I Engineering Group)** . . . ." *Id.* Ex. B (emphasis added). Wolfram went to work for E&I. Am. Compl. ¶ 40. SAI concludes that "Wolfram is believed to have used or otherwise relied upon SAI's Confidential Information, including, but not limited to, the pricing, structure, and specification of SAI's bid for the Cloud Manassas Project in making or otherwise discussing E&I's proposal for the Cloud Manassas Project." *Id.* ¶ 56. SAI further speculates that "Wolfram was instrumental in obtaining the Stack Portland Project by, directly or indirectly, soliciting, contacting, or otherwise servicing Stack on behalf of E&I and using or relying upon Confidential Information, including SAI's pricing and structure for the Stack Portland Project." *Id.* ¶ 68. SAI makes identical allegations regarding the Stack SV Project. *See id.* ¶ 72.

## LEGAL STANDARD

In order to survive dismissal under Rule 12(b)(6), SAI "must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**ARGUMENT**

**I. SAI'S TRADE SECRETS MISAPPROPRIATION CLAIM, COUNT II, IS UNSUPPORTED BY ANY ACTUAL FACTS AND SHOULD BE DISMISSED.**

To state a cause of action for misappropriation of trade secrets under the ITSA, a plaintiff must allege facts that the information at issue was: (1) a trade secret; (2) that was misappropriated; and (3) used in the defendant's business. *Kim v. Dawn Food Prods., Inc.*, 206 F. App'x 558, 560 (7th Cir. 2006). Here, SAI has not sufficiently alleged any valid trade secret under the ITSA, nor how SAI safeguards its purported trade secrets. Most importantly, SAI has not alleged any facts showing that Wolfram misappropriated any trade secrets, let alone used them in E&I's business. SAI's entire theory of misappropriation and use is based upon speculation and bereft of any alleged wrongful act. Finally, to the extent that SAI actually alleges a valid claim, Count II nevertheless fails because the purported wrongful acts all occurred outside of Illinois and the ITSA does not have extraterritorial reach. Thus, Count II should be dismissed.

**A. Count II Should Be Dismissed because SAI Has Not Alleged a Valid Trade Secret Under the ITSA.**

To establish a trade secret, the ITSA requires that SAI point to a specific type of information that: "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). SAI has not sufficiently pled either of these elements.

**1. SAI has not sufficiently alleged information that "is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use"**

It is not clear what SAI alleges to be the "trade secret" at issue in this case. SAI alleges that Wolfram "misappropriated, used, and/or disclosed the Confidential Information," that its "Confidential Information" derives independent economic value from not being generally known

4

or readily ascertainable, and that SAI has made reasonable efforts to preserve the secrecy of its "Confidential Information." Am. Compl. ¶¶ 90-91. SAI's Amended Complaint defines "Confidential Information" as "SAI's confidential and proprietary business information." *Id.* ¶ 11. It alleges that the Confidential Information "consists of, among other things," customer contact information, pricing, "business/marketing plans and strategies," "existing and in-development products," profit margins and financial information, and compensation that is paid to employees (hereafter the "Listed Categories"). *Id.* ¶¶ 11, 89. While Wolfram recognizes that purported trade secrets need not be described in a complaint in a manner that deprives them of secrecy, SAI has pushed past *Iqbal-Twombly* standards. The Listed Categories are so general that they do not provide any context to them, and essentially render the first element of the ITSA meaningless at the pleadings level, because any business could plead labels and general categories of information that is somehow confidential. What makes the Listed Categories even more egregious is the fact that most of them are, on their face, not something that is traditionally considered a trade secret. *See Segerdahl Corp. v. Ferruzza,* No. 17 cv 3015, 2018 WL 828062, at *3 (N.D. Ill. Feb. 10, 2018) (dismissing complaint where the plaintiff only alleged broad areas of technology as trade secrets).[3]

For example, contact information is not a trade secret since such information is easily ascertainable from the internet, and SAI has not alleged any information as to how the information was compiled. See *Fleetwood Packaging v. Hein*, No. 14 C 09670, 2015 WL 6164957, *4 (N.D.

---

[3] *See also Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (dismissing complaint because the plaintiff only alleged broad categories of information as trade secrets); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 4, 1993) (dismissing complaint that merely referenced "plans" and "specifications" because such "blanket generalizations . . . failed to specify with any exactitude which pieces of information actually constitute trade secrets."); *Lear Siegler, Inc. v. Glass Plastics Corp.*, No. 81 C 3433, 1987 WL 15749, at *2 (N.D. Ill. Aug. 12, 1987) (granting summary judgment where "Plaintiff's lack of specificity concerning the marketing information it alleges constitutes trade secrets is fatal to that claim"); *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015) ("The court cannot analyze whether a piece of information was sufficiently secret to derive economic value or whether [the plaintiff] took reasonable efforts to keep information secret without first knowing, with particularity, what information comprises the secret.").

5

Ill. Oct. 20, 2015) (dismissing allegations that customer lists and contribution reports were trade secrets and noting that the plaintiff "has not provided a single detail about how it built the customer list and, more importantly, what steps it takes to keep its customer contacts secret.").

Regarding pricing, SAI has not identified or even generally described any formula or other calculation methods that warrant protection. Nor has SAI alleged that customers were restricted from disclosing SAI pricing. The pricing, therefore, is not trade secret. *See JMP-Newcor Int'l, Inc. v. Sourcing Sols., Inc.*, No. 96 C 8150, 1996 WL 754131, at *1 (N.D. Ill. Dec. 31, 1996) ("Additionally, plaintiff has not established how disclosure of information about the identity of the manufacturers and the price structure for the products enables a competitor to obtain economic advantage or value."); *Label Printers v. Pflug*, 564 N.E.2d 1382, 1390-91 (Ill. App. Ct. 1991) (refusing to protect pricing information); *Trailer Leasing Co. v. Assocs. Com. Corp.*, No. 96 C 2305, 1996 WL 450801, at *1 (N.D. Ill. Aug. 8, 1996).

Regarding SAI's "business/marketing plans and strategies," SAI's description is so vague as to be completely meaningless, and clearly cannot be considered a well-pleaded fact. *See Segerdahl Corp.*, 2018 WL 828062, at *3. The "existing and in-development products" also are not trade secrets. Products are not "information" and, therefore, could not fit the definition of a trade secret. *See* 765 ILCS 1065/2(d). Moreover, products are sold to the public domain and can often be reverse engineered, facts that eliminate any trade secret protection under the ITSA. *See Plastic Film Corp. of Am. v. Achilles USA, Inc.*, No. 06 C 5583, 2007 WL 9814704, at *1 (N.D. Ill. Sept. 26, 2007) (granting a motion to dismiss where plaintiff failed to allege that products were not publicly available). Underscoring this point, SAI's website even includes a technical library that contains documents regarding its products. Similarly, profit margins generally are not trade secrets. *See Stenstrom Petrol. Servs. Grp., Inc. v. Mesch*, 874 N.E.2d 959, 974 (Ill. App. Ct. 2007) ("We reject [plaintiff's] argument that its profit margin is a trade secret. The mere knowledge of

6

the profit desired by an employer does not constitute a trade secret."). And, of course, compensation that is paid to employees are not trade secrets, since such information could always be shared by employees, and indeed employees may have the right to do so under federal labor laws. Thus, SAI's attempt to regulate against the ability of employees to communicate such information could violate such labor laws, including the National Labor Relations Act. For these reasons, SAI's trade secrets claim should be dismissed. SAI cannot force a former employee into burdensome litigation absent meeting the *Iqbal-Twombly* standard of pleading actual trade secrets.

### 2. SAI has not sufficiently alleged how it safeguards its trade secrets.

SAI also has failed to sufficiently allege that the alleged trade secret(s) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). SAI alleges merely that employees with access to Confidential Information are required to sign an employment agreement that includes confidentiality, non-solicitation, and non-competition provision, and that SAI restricts access to its electronically stored Confidential Information with individualized logins and passwords. Am. Compl. ¶ 91. This Court should not give this allegation any weight, because it is undisputed that SAI *expressly agreed* to allow Wolfram to work for E&I, the very competitor that SAI now complains of and concludes that Wolfram must have used trade secrets through the mere fact that he now works for E&I. Thus, SAI cannot be said to have safeguarded trade secrets where it allowed Wolfram to work for E&I.

Furthermore, Wolfram, who was hired as SAI's Vice President of Sales, was not required to sign such an agreement until nearly a year after he started with SAI. *See id.* ¶¶ 9, 15. The face of the Agreement itself acknowledges that Wolfram previously had access to Confidential Information. *See id.* Ex. A at § 1. Moreover, even assuming (for purposes of this Motion) that the Agreement is enforceable, Illinois law is clear that requiring confidentiality agreements, without more, is insufficient to meet the reasonableness standard of 765 ILCS 1065/2(d). *See Arcor, Inc.*

7

*v. Haas*, 842 N.E.2d 265, 271 (Ill. App. Ct. 2005) (holding trial court abused its discretion in granting a preliminary injunction when trade secret holder relied solely on a confidentiality agreement to protect its information); *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) ("While 'an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret,' such an agreement, without more, is not enough." (quoting *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011))).

Moreover, SAI's allegation that it restricted access to "its electronically stored Confidential Information with individualized logins and passwords" is not sufficient, even combined with the allegation of requiring confidentiality agreements. For one thing, the allegation itself is limited only to "electronically stored Confidential Information," but such measure clearly does not prohibit non-electronically stored information, and there is no allegation that the Confidential Information is only stored electronically. Even if this password protection applied to all of the Confidential Information, this allegation would still be insufficient because password protection is nothing more than "normal business practices insufficient to meet the statutory definition of trade secrets." *See Opus Fund Servs.*, 2018 WL 1156246, at *3; *see also Starsurgical, Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1082 (E.D. Wis. 2014) (noting that "'normal business practices' like restricting access and requiring passwords" were not enough for trade secret protection).

For example, in *Opus Fund Services (USA) LLC v. Theorem Fund Services, LLC*, the plaintiff alleged that "[i]n addition to storing this information on a password protected and restricted network, [the plaintiff] has also sought to protect its confidential nature by limiting its employees' use of the information through Confidentiality Agreements prohibiting the disclosure of such information to third parties." 2018 WL 1156246, at *3. The Court agreed with the defendants' argument that these security practices "are normal business practices insufficient to

8

meet the statutory definition of trade secrets" and granted the defendants' motion to dismiss. *Id.* The Court explained that the plaintiff failed "to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information." *See id.* The allegations here fare no better than the allegations in *Opus Fund Services*. Consequently, SAI's trade secrets claim should be dismissed for this additional reason.

### B. Count II Should Be Dismissed because SAI Has Not Alleged any Facts that show Actual Trade Secrets Misappropriation.

Even if Count II alleged valid trade secrets, it would still fail because it does not sufficiently allege the second prong of a misappropriation claim under the ITSA: the actual "misappropriation." The ITSA defines "misappropriation" as the unauthorized acquisition or disclosure of a trade secret with the knowledge that it was acquired with "improper means." 765 ILCS 1065/2(b). "Improper means" under ITSA denotes an egregious act that is more than negligence, and instead rises to the level of "theft," "bribery," "misrepresentation," "breach" of a fiduciary "duty to maintain secrecy," or "espionage." *See* 765 ILCS 1065/2(a). Here, the Amended Complaint suffers from three deficiencies: (1) it does not identify the specific trade secrets that were actually stolen; (2) it does not provide any facts stating when, where, or how Wolfram conducted his theft; and (3) it does not allege how Wolfram acted with "improper means." These deficiencies are fatal, especially where Wolfram resigned in May of 2020 and now, almost one year later, and presumably after SAI conducted its internal investigations, SAI still does not have any facts showing actual misappropriation. Under these circumstances, SAI fails to meet its Rule 12(b)(6) burden. *See Liion, LLC v. Vertiv Grp. Corp.*, No. 18 C 6133, 2019 WL 1281977, at *3 (N.D. Ill. Mar. 20, 2019) (dismissing an ITSA actual misappropriation claim because the plaintiff did not sufficiently allege any facts regarding the actual trade secret theft).

9

### 1. SAI fails to identify which specific trade secrets were stolen.

As set forth above, the Amended Complaint utilizes an overly-broad definition of "Confidential Information" that allegedly includes generally-labeled categories of information. This does not suffice for purposes of the ITSA's misappropriation element. The fact that SAI claims it has trade secrets is not something unique, as most businesses claim the same. Rather, to sustain an ITSA claim, SAI must allege the specific trade secrets that are the subject of any alleged theft. SAI's failure to "connect the dots" requires dismissal. *See Segerdahl Corp.*, 2018 WL 828062, at *3 ("Although [the plaintiff] makes more definite allegations of what constitutes trade secrets elsewhere in the complaint, none of those allegations relate to the alleged misappropriation by [the defendant]."); *Allied Benefit Sys., Inc. v. Ramirez*, 188 F. Supp. 3d 704, 707 (N.D. Ill. 2015) (dismissing case where the plaintiff could not identify any information actually disclosed or used).

### 2. SAI fails to allege the circumstances of a purported trade secrets theft.

The Amended Complaint also does not allege any facts describing when, where, or how Wolfram allegedly stole any of SAI's trade secrets. This omission is glaring, given the time and opportunity SAI has had to prepare its case. There are no allegations of theft by Wolfram. According to SAI's timeline, Mr. Wolfram gave his notice of resignation on May 15, 2020, and his last day of work for SAI was on May 29, 2020. Am. Compl. ¶ 38. SAI filed this lawsuit on December 9, 2020, over 6 months after Wolfram resigned. Despite this lengthy amount of time, SAI has not been able to come up with any facts showing how Wolfram stole such secrets. There are no allegations of nefarious downloads or covert acts. In fact, SAI does not even allege that it conducted a forensic examination of any of its electronic devices to determine whether information was improperly downloaded, forwarded or otherwise retained by Mr. Wolfram. Or, more likely given the timeline, SAI took this step and found nothing of note. Either way, the failure to conduct or reference an adequate forensic investigation or the factual basis for any purported theft is itself

a reason to foreclose relief under the ITSA. *See, e.g.*, *Hein*, 2014 WL 7146439, at \*7.

### 3. SAI does not allege that Wolfram acted with "improper means."

Finally, SAI has not alleged the requisite mens rea that the ITSA requires, i.e., that Wolfram stole its trade secrets with "improper means." As noted above, "improper means" under the ITSA means that one has committed a nefarious act, and any allegation of such wrongful intent and conduct must be couched in actual facts. Here, SAI cannot point to any factual event that supports such an inference. The fact that Wolfram left SAI and went to work for E&I is not enough to support the notion that Wolfram has acted with wrongful intent.

The case of *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059 (N.D. Ill. 2020), dealt with similar facts and claims alleged by the plaintiff (PCA) against its former employee (Croner). Croner moved to dismiss the ITSA and Defend Trade Secrets Act ("DTSA") claims on the grounds that PCA had failed to allege misappropriation. In granting Croner's motion, the Court explained:

> Here, PCA does not plausibly allege misappropriation by Croner. The complaint itself makes plain that rather than acquiring the alleged trade secrets by improper means, Croner acquired them through the normal course of his employment: 'In order to perform his job responsibilities, Croner was given access to confidential information and trade secrets' that 'PCA paid Croner to acquire, accumulate, and assemble over years.' Compl. ¶ 29, 33. Even if Croner did not return the information, as Plaintiff alleges, the failure to return lawfully acquired information does not constitute 'misappropriation' of that information under the DTSA.[4] *See, e.g.*, *Prominence Advisors, Inc. v. Dalton*, No. 17-CV-04369, 2017 WL 6988661[,] at \*4 (N.D. Ill. Dec. 18, 2017) (rejecting argument that the defendant obtained information by improper means where he retained access, initially acquired during the normal course of his employment, to a DropBox folder and external hard drive that contained confidential information).
>
> Given that Croner did not acquire the allegedly secret information by improper means, the misappropriation analysis hinges on whether PCA adequately alleges that Croner has disclosed or used the trade secrets without express or implied consent. PCA primarily bases the allegations in its complaint of unauthorized

---

[4] The Court also dismissed the ITSA claim in a separate section of the opinion that adopted the discussion of the DTSA claim.

11

> disclosure on the fact that Croner admits to having solicited some of his former clients from PCA and on the inference that 'because Croner has not returned any information to PCA, Croner is using PCA's Confidential Information and Trade Secrets in connection with these solicitations.' Compl ¶ 37. The complaint provides no additional factual support for this assertion, however. But even if the Court infers Croner's possession of the information in question, mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets, even when considered in conjunction with solicitations of former clients. *See, e.g.*, *Indus. Packaging Supplies, Inc. v. Channell*, No. 18-CV-00165[,] 2018 WL 2560993[,] at *2 (N.D. Ill. 2018) (holding that allegations that the defendants, former employees with access to trade secrets, left for a competitor offering the same services to the same clientele are 'not enough to justify [the plaintiff's] otherwise unsupported suspicions that the defendants used or disclosed' trade secrets).

*Id.* at 1066-67 (footnote added). Here, SAI's allegations fare no better. There are no allegations that Wolfram took information with him when he left. Even if he was in possession of information (which he is not), mere possession of trade secrets does not constitute misappropriation. *See Indus. Packaging Supplies, Inc.*, 2018 WL 2560993, at *2. This is especially true where SAI, in Wolfram's severance agreement, expressly allowed Wolfram to work for E&I, SAI's competitor. Under these circumstances, Wolfram's position is even stronger than the defendant in *Croner*, because SAI consented to Wolfram working for E&I. The fact that SAI now regrets its decision and seeks to control the experience Wolfram has in his mind does not provide a justification for this case to continue, where there are not allegations of misappropriation. In addition, the allegations that SAI lost business to E&I do not suffice to allege that Wolfram misappropriated trade secrets. *See Croner*, 419 F. Supp. 3d at 1069 ("Similarly, the fact that PCA has lost business to [Croner's new employer] since Croner's resignation fails to support a plausible inference that Croner has misappropriated trade secrets."). Mere competition is not only lawful, but is encouraged by the public policy of Illinois. SAI cannot connect any loss of business to any single act of Wolfram, no matter how circumstantial. For these reasons, Count II should be dismissed.

12

**C.     Count II Should Be Dismissed Because SAI Has Not Alleged that Wolfram Used any of SAI's Trade Secrets**.

Finally, the ITSA also requires a plaintiff to allege that the defendant is actually using the plaintiff's trade secrets. SAI merely speculates as to use. *See* Am. Compl. ¶¶ 2, 68, 72, 76, 93. SAI's conclusions are insufficient. *See Croner*, 419 F. Supp. 3d at 1071 n.8 (finding that PCA's ITSA claims failed for the additional reason that PCA could not plead that the defendant actually used the trade secret in its business); *Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1157 (Ill. App. Ct. 2009) (dismissing trade secrets claim for failure to allege actual use); *Woodard v. Harrison*, No. 08–2167, 2008 WL 4724370, at *3 (C.D. Ill. Oct. 24, 2008) (same); *Abbott Lab'ys v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (same). Moreover, SAI has not alleged, and cannot allege, an inevitable disclosure theory of misappropriation, where SAI expressly allowed Wolfram to work for E&I.

**II.     SAI'S CLAIM FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED**.

**A.     SAI's Claim for Breach of Fiduciary Duty Is Preempted by the ITSA**.

This Court should find that SAI's Count III breach of fiduciary duties claim is preempted by the ITSA. "State law causes of action that are based upon the misappropriation of confidential business information are preempted by ITSA . . . even when the information does not rise to the level of a trade secret." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 905 (N.D. Ill. 2019). "To the extent that [the plaintiff]'s state law theories of liability are premised on conduct other than the misappropriation of [the plaintiff]'s confidential business information, however, they are not preempted." *Id.* "[T]he crux of the [preemption] question [is] whether the claim would lie if the information at issue were not confidential." *Id.* (alterations in original) (quoting *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 802 (N.D. Ill. 2016)).

Applying this standard, Count III is preempted by the ITSA. First, SAI incorporated all of its preceding allegations into its claim for breach of fiduciary duty, including the ITSA claim. Am.

13

Compl. ¶ 98. Thus, the breach of fiduciary duty claim rests on the same allegations as the ITSA. Moreover, SAI alleges that Wolfram breached a fiduciary duty owed to SAI by "disclosing SAI Confidential Information to E&I without authorization . . . ." *Id.* ¶ 100; *see also id.* ¶ 43. This is the same "Confidential Information" that is alleged in the ITSA claim. *See id.* ¶¶ 89-96. There would be no claim for breach of fiduciary duty if the information were not confidential. *See Abrasic 90 Inc.*, 364 F. Supp. 3d at 906 (finding breach of fiduciary duty claim was preempted by the ITSA and noting that "[i]f the information at issue were not confidential—that is, if [the plaintiff] had posted all of the information at issue on its website for the general public's consumption—then it is difficult to imagine how the defendants could be said to have . . . breached the fiduciary duty they owed to [the plaintiff] by copying and referencing the information just as any other member of the public could."); *Int'l Quality & Productivity Ctr./Penton Learning Sys., LLC v. Eck*, No. 98 C 3146, 1999 WL 35353, at *6 (N.D. Ill. Jan. 11, 1999) (dismissing unfair competition claim where there were no allegations that what the defendant stole was secret). Thus, the entire basis of SAI's breach of fiduciary duties claim is based upon the notion that Wolfram somehow stole confidential information. For these reasons, the claim for breach of fiduciary duty is preempted by the ITSA and should be dismissed. *See Abrasic 90 Inc.*, 364 F. Supp. 3d at 906 (dismissing claim for breach of fiduciary duty as preempted by the ITSA); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968 (N.D. Ill. 2000) (same); *Carpenter*, 2011 WL 1297733, at *2 (same); *see also Sysco Corp. v. Katz*, No. 13 C 5477, 2013 WL 5519411, at *5 (N.D. Ill. Oct. 3, 2013) (dismissing portions of breach of fiduciary duty claims that were based upon accessing and disclosing confidential information).

### B. <u>SAI Has Failed to Adequately Plead Its Claim for Breach of Fiduciary Duty</u>.

The breach of fiduciary duty claim should also fail for the additional reason that it is supported by vague and conclusory allegations, rather than specific facts. The only allegations

14

regarding acts taken prior to Wolfram's resignation are that Wolfram spoke with E&I back in January 2020, and that "SAI's review of Wolfram's SAI issued phone also identified numerous calls from Wolfram to Cloud almost immediately after Wolfram spoke to E&I." Am. Compl. ¶¶ 42, 44. SAI then alleges that it "believes" Wolfram 1) shared Confidential Information with E&I during phone conversations prior to his resignation from SAI, and 2) contacted Cloud to promote E&I's switchgear proposals over SAI. *Id.* ¶¶ 43, 45. However, SAI does not allege the substance of these calls (because it does not actually know the substance), nor does it point to any exchange of documents between Wolfram and E&I while Wolfram was still employed with SAI.

Neither of the actual facts alleged by SAI are actionable, and SAI has merely provided an unsupported conclusion that Wolfram must have breached his fiduciary duty merely by talking to the company that would eventually hire him, something that occurs all the time and is not controversial. These allegations do not survive *Twombly-Iqbal* pleading requirements. The fact of the matter is that SAI allowed Wolfram to work for E&I, and now cannot retract its decision almost a year after Wolfram resigned merely on its unsupported belief that Wolfram must have done something wrong. Count III should be dismissed with prejudice.

## CONCLUSION

For these reasons, Wolfram respectfully requests that this Court dismiss with prejudice SAI's claims for misappropriation of trade secrets under the ITSA and breach of fiduciary duty.

| | |
|---|---|
| Dated: April 16, 2021 | Respectfully submitted,<br>**SHANE WOLFRAM**<br><br>*/s/ Daniel R. Saeedi* |
| Daniel R. Saeedi (ARDC #6296493)<br>dsaeedi@taftlaw.com<br>Zachary R. Clark (ARDC #6328816)<br>zclark@taftlaw.com<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 E. Wacker Drive, 28th Floor<br>Chicago, IL 60601<br>(312) 527-4000 | Bonnie A. Lynch, Esq. (Fed. ID # 10402)<br>blynch@hsblawfirm.com *Admitted Pro Hac Vice*<br>Denny P. Major, Esq. (Fed. ID # 10225)<br>dmajor@hsblawfirm.com *Admitted Pro Hac Vice*<br>H. Samuel Mabry, III, Esq. (Fed. ID # 3252)<br>smabry@hsblawfirm.com *Pro Hac Vice Pending*<br>HAYNSWORTH SINKLER BOYD, P.A.<br>One North Main, 2nd Floor, Greenville, SC 29601 |

15