IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SWITCHBOARD APPARATUS, INC. ) <br> d/b/a SAI ADVANCED POWER ) <br> SOLUTIONS, INC., ) <br>   ) <br>   Plaintiff, ) <br>   ) <br>   v. ) <br>   ) <br> SHANE WOLFRAM and E&I ) <br> ENGINEERING, INC., ) <br>   ) <br>   Defendants. ) | Case No. 21 C 1665 <br><br> Magistrate Judge M. David Weisman |

**MEMORANDUM OPINION AND ORDER**

In its second amended complaint, plaintiff, Switchboard Apparatus, Inc. d/b/a SAI Advanced Power Solutions, Inc. ("SAI"), asserts allegations of tortious interference with contract (count V) and misappropriation of trade secrets in violation of the Illinois Trade Secrets Act (count IV) against Defendant E&I Engineering Corporation[1] ("E&I") as well as allegations against Defendant Shane Wolfram. ECF 67 at 22-25. Defendant E&I has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(2) motion to dismiss for lack of personal jurisdiction. ECF 78. For the reasons set forth below, the motion is granted. Therefore, the complaint against Defendant E&I is dismissed without prejudice.

**Facts**

The following allegations are taken as true. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) ("We take the plaintiff's asserted facts as true and resolve any factual disputes in its favor.") (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

SAI, an Illinois Corporation with its principal place of business in Franklin Park, Illinois, designs, manufactures and supplies custom-made electrical switchgear. ECF 67 at ¶¶ 12, 16. SAI hired Shane Wolfram, a Wisconsin resident, as its U.S. Vice President of Sales in August 2011 and entered into a non-compete and non-solicitation agreement with Wolfram in July 2012. *Id.* at ¶¶ 3, 13, 18. As part of this agreement, Wolfram agreed, among other things, not to, directly or indirectly, solicit, service or have contact with any entity that is a top ten revenue-producing client of SAI. *Id.* at ¶ 24. As Vice President of Sales, Wolfram had access to and acquired knowledge of SAI's confidential and proprietary business information, including SAI's double stack design which

---

[1] Defendant E&I notes in its motion to dismiss that the correct name of the party is E&I Engineering Corporation, and that it was incorrectly sued as "E+I Engineering, Inc." ECF 78 at 1.

1

significantly minimizes the footprint of certain switchgear systems, as compared to the industry standard double stack design. *Id.* at ¶¶ 20, 34; ECF 88, Exhibit 1 at ¶ 19. This information is stored on password-protected computers, within password-protected electronic file folders, on a secured server and/or in locked cabinets at SAI's office in Franklin Park, Illinois. ECF 88, Exhibit 1 at ¶ 10. Wolfram was the primary point of contact between SAI and its data customers, which include Holder, Stack and Cloud, during the process in which SAI would respond to a request for a proposal (an "RFP") from these customers. ECF 67 at ¶ 21.

Beginning in Fall 2019, E&I, SAI's competitor in the switchgear industry, began recruiting Wolfram to join E&I. *Id.* at ¶ 2, 69. E&I is a South Carolina corporation with its United States headquarters located in Anderson, South Carolina. *Id.* at ¶ 14. E&I is not registered to do business in Illinois, does not maintain any type of facility, production or otherwise, in Illinois, has no mailing address in Illinois, owns no real or personal property in Illinois, has no ownership interest in any entity incorporated or located in Illinois, and no person with an ownership interest in E&I is located in Illinois. ECF 78, Exhibit A at ¶¶ 6-9, 13-14. E&I has one employee located in Illinois who works remotely from his home. *Id.* at ¶ 10.

In December 2019, E&I and Wolfram began secret negotiations for Wolfram to bring SAI's customers and proprietary designs to E&I. ECF 67 at ¶ 30. As part of these discussions, Wolfram traveled to an E&I manufacturing facility in February 2020 to meet with E&I representatives. *Id.* at ¶ 31, 32. Prior to the meeting, E&I's former national sales manager informed Wolfram that E&I would conduct an "in depth review" of E&I's "offering and go over double stack design potential as well" and E&I's CEO requested SAI's proprietary information on the double stack design, including technical, cost and pricing information to assist E&I expanding into the US market. ECF 68 at ¶ 33, 36. Wolfram allegedly shared SAI's confidential information with E&I during the recruitment process and while still employed by SAI, including the specifics of SAI's proposals for the Cloud Manassas Project (located in Manassas, Virginia), Stack Portland Project (located in Portland, Oregon), and Stack Silicon Valley Project (located in Silicon Valley, California). ECF 67 at ¶ 73; ECF 78, Exhibit B at ¶¶ 6, 8, 10.

Wolfram tendered a notice of resignation to SAI on May 15, 2020, effective May 29, 2020. ECF 67 at ¶ 4, 63. Wolfram informed SAI that his new employer was E&I and promised SAI it would not suffer any economic harm as a result of him joining the company. Accordingly, SAI and Wolfram executed a separation agreement in which SAI agreed to waive its objection to Wolfram working for E&I provided that Wolfram abide by Section 2(c) of the Non-Solicitation Agreement, which disallowed Wolfram from directly or indirectly soliciting, servicing, contracting or otherwise working with any of SAI's top ten revenue-generating clients, including Holder, Stack, and Cloud, for a period of six months following termination from employment. *Id.* at ¶¶ 65-67, Exhibit A at 3. In June 2020, Wolfram began working as E&I's Vice President of Sales. *Id.* at ¶ 77.

Wolfram provided E&I a copy of his Non-Solicitation and Separation Agreements by at least May 29, 2020, prior to beginning work at E&I. *Id.* at ¶ 77-79. In June 2020, E&I's CEO called Wolfram's SAI-issued cell phone and asked what it would take to get "Bob" to join Wolfram at E&I. *Id.* at ¶ 82. SAI believes the "Bob" referenced in the phone call refers to Bob Brown, then SAI-Director of Customer Success. ECF 88, Exhibit 1 at ¶ 28. SAI claims Wolfram was and is working with E&I to solicit SAI employees to leave their employment with SAI and join E&I. ECF 67 at ¶ 83.

SAI alleges that E&I wrongfully acquired three projects, ECF 78 at 1, and as a result of E&I's actions, SAI has and will continue to suffer harm in Illinois including lost business opportunities, customers, profits and goodwill, ECF 88 at 6. SAI filed suit in the Circuit Court of Cook County, Illinois against Wolfram and named E&I as a respondent in discovery. ECF 78 at 1-2; *See* ECF 1 at ¶¶ 1-2. SAI dismissed E&I as a respondent in discovery. *Id.* at ¶ 9. Wolfram subsequently removed this matter to the United States District Court for the Northern District of Illinois based on diversity jurisdiction. *See* ECF 1. SAI filed an amended complaint against Wolfram, and after uncovering previously unknown information about E&I during discovery, filed a second amended complaint adding E&I as a defendant. ECF 60 at ¶¶ 1, 2, 5. In its second amended complaint, SAI asserts allegations of tortious interference with contract (count V) and misappropriation of trade secrets in violation of the Illinois Trade Secrets Act (count IV) against E&I as well as allegations against Wolfram. ECF 67 at 22-25. E&I then filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. ECF 78.

The justification for jurisdiction that SAI provides in its second amended complaint is that "jurisdiction… [is] proper in Cook County, Illinois, because Wolfram and E&I transact business in Cook County, Illinois and a substantial part of the events giving rise to this action took place in Cook County, Illinois." ECF 67 at ¶ 15. E&I contends that its contacts with Illinois are non-existent such that it lacks the required minimum contacts with Illinois to establish general or specific jurisdiction. ECF 78 at 2. Consequently, E&I argues that this Court "exercising any jurisdiction over E&I would violate E&I's due process rights under the United States Constitution." *Id.* at 10. E&I submits two sworn declarations in support of its jurisdictional arguments. *See* ECF 78, Exhibit A and B.

## Discussion

*Federal Rule of Civil Procedure 12(b)(2)*

A motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 700 (N.D. Ill. 2017); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) ("Personal jurisdiction refers to a court's 'power to bring a person into its adjudicative process.'") (citing BLACK'S LAW DICTIONARY 930 (9th ed.2009)). Any action against a party over whom the Court lacks personal jurisdiction must be dismissed. *Aon plc v. Infinite Equity, Inc.*, No. 19-cv-07504, 2021 WL 4034068, at *4 (N.D. Ill. Sept. 3, 2021). When a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Purdue Research Foundation*, 338 F.3d at 782. When ruling on a Rule 12(b)(2) motion based on submission of written materials, and not an evidentiary hearing, as here, "plaintiff need only make out a *prima facie* case of personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d at 491 (internal quotations omitted).

Courts may consider written submissions from both parties and must accept as true well-pleaded facts alleged in plaintiff's complaint and resolve factual disputes in plaintiff's favor. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction when a defendant challenges by declaration a fact alleged in plaintiff's complaint (*Purdue Research Foundation*, 338 F.3d at 783), and if the plaintiff fails to refute a fact within the defendant's affidavit, that fact is accepted as true (*Mold-A-Roma Inc. v. Collector-Concierge-Int'l*, No. 18-CV-08261, 2020

WL 1530749, at *2 (N.D. Ill. Mar. 31, 2020); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 904 n. 3 & 905 (N.D. Ill. 2003)). *See Shanahan v. Nat'l Auto Prot. Corp.*, No. 19-CV-03788, 2020 WL 3058088, at *1 (N.D. Ill. June 9, 2020).

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research Foundation*, 338 F.3d at 779 (citing *Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). "Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing 735 Ill. Comp. Stat. 5/2-209(c)). The Seventh Circuit has held "that there is no operative difference between these two constitutional limits." *See Id.* (citing *Tamburo*, 601 F.3d at 700; *Hyatt International Corp.*, 302 F.3d at 715). Because the Illinois long-arm statute is coextensive with the Federal Constitution's Due Process Clause, we assess whether the exercise of personal jurisdiction comports with federal due process. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020).

"Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Optimas OE Sols., LLC v. Grimes*, No. 20 C 251, 2020 WL 436917, at *7 (N.D. Ill. July 30, 2020) (citing *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912-13 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))) (alteration in original) (internal quotation marks omitted). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Id.* (citing *N. Grain Mktg. LLC*, 743 F.3d at 492-93 (quoting *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 475 (1985))) (internal quotation marks omitted) (citations omitted).

There are two branches of personal jurisdiction – general and specific. *See J.S.T. Corp.*, 965 F.3d at 575. A court may exercise general jurisdiction over an out-of-state defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). In its motion, E&I argues that "this Court lacks general jurisdiction over E&I," ECF 78 at 11, and in its response brief, "SAI acknowledges that this Court cannot exercise general personal jurisdiction over E&I," ECF 88 at 7 n.3.

Thus, we look only to whether plaintiff has met its burden of establishing that specific personal jurisdiction exists. For this inquiry we evaluate whether E&I had sufficient minimum contacts to the state of Illinois such that the litigation of this case in this court does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. While general jurisdiction "permits a defendant to be sued in a forum for *any* claim, regardless of whether the claim has any connection to the forum state" (*Lexington Insurance Company v. Hotai Insurance Company, Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019), "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction" (*Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919).

4

Three "essential requirements" must be met to establish specific personal jurisdiction over an out-of-state defendant: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted). Furthermore, "only intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016). As a result, "[i]t is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be 'with the forum State itself, not … with persons who reside there." *See Optimas OE Sols.*, LLC, No. 20 C 251, 2020 WL 436917, at *7 (citing *Philos Techs., Inc.*, 802 F.3d at 913 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014))). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation… [c]rucially, not just any contacts will do: 'For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden*, 571 U.S. at 284) (emphasis added).

*Specific Jurisdiction:*

In its motion to dismiss, E&I argues that "its contacts with Illinois are virtually non-existent, and cannot establish specific jurisdiction over E&I in Illinois." ECF 78 at 12. In its response brief, SAI claims that "[t]he Court has specific jurisdiction over E&I" and "E&I's conduct… establishes that E&I has sufficient minimum contacts with Illinois." ECF 88 at 8.

1. *E&I's Alleged Conduct Purposefully Directed At The Forum State*

SAI contends the following minimum contacts satisfy the first requirement to establish specific personal jurisdiction, that "the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state." *Felland*, 682 F.3d at 673. First, SAI alleges that "E&I directed and/or encouraged Wolfram to solicit other Illinois-based employees of SAI in an attempt to also get these employees to leave SAI and join E&I." ECF 88 at 8. Second, E&I "directed and/or encouraged Wolfram to obtain and disclose to it confidential and proprietary information located in Illinois." *Id.* at 9. Third, E&I "called, texted and emailed Wolfram while he was in Illinois in 2019 and 2020." *Id.* at 10. Fourth, E&I "directed and/or encouraged Wolfram to share . . . SAI's confidential information regarding the specifics of SAI's proposal for the Stack Portland Project… and [the Stack Portland Project] . . . explicitly called for certain business to be conducted in Illinois." *Id.* at 10-11.

The Court addresses each alleged E&I contact with the state of Illinois in turn:

A. *Directed/Encouraged Wolfram to Solicit Illinois-Based Employees*

SAI claims that "E&I, acting through its CEO, called Wolfram's SAI-issued cell phone… and directed Wolfram to solicit Bob Brown, an Illinois resident and one of SAI's Illinois-based employees, in an effort to convince Brown to leave his employment at SAI and to join E&I." ECF 88 at 8. According to its Second Amended Complaint, during this call E&I's CEO "asked what it

would take to get 'Bob' to join Wolfram at E&I." ECF 67 at ¶ 82.

This phone call is not a suit-related contact. E&I simply asking Wolfram "what it would take to get 'Bob' to join Wolfram at E&I" is not the same as intentionally directing Wolfram to solicit Bob Brown in violation of Wolfram's Non-Solicitation Agreement with SAI. *See Tamburo*, 601 F.3d at 702 ("To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction; we therefore evaluate specific personal jurisdiction by reference to the particular conduct underlying the claims made in the lawsuit."). Asking this particular question in a single phone call is not conduct underlying the claim of tortious interference with contract (count V), and especially not underlying the claim of misappropriation of trade secrets in violation of the Illinois Trade Secrets Act (count IV) against E&I in this case.

Furthermore, this single phone call has no connection to the forum state, Illinois, apart from the fact that Wolfram's SAI-issued cell phone had already been returned to SAI, presumably in Illinois. *See* ECF 67 at ¶ 82. Brad Bell, SAI's President of Mission Critical Success, answered E&I's attempted phone call to Wolfram. *Id.* However, "it is the defendant … that must create the contacts in the forum state, and those contacts must be 'with the forum State itself, not … with persons who reside there."[2] *Philos Techs., Inc.*, 802 F.3d at 913 (quoting *Walden* 571 U.S. at 284) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, *not* based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (quoting *Burger King*, 471 U.S. at 475) (emphasis added). This single E&I phone call unexpectedly answered by Brad Bell, a person affiliated with the state of Illinois, is the exact "random, fortuitous, or attenuated" contact that Due Process protects against.

SAI also claims "E&I directed and/or encouraged Wolfram to solicit other Illinois-based employees of SAI in an attempt to also get these employees to leave SAI and join E&I." ECF 88 at 8. In its Second Amended Complaint, SAI alleges two examples: "Wolfram met and had dinner with Bob Brown, the then SAI-Director of Customer Success for the intended purpose of convincing Brown to leave his employment and to join Wolfram at E&I… [and] Wolfram instructed E&I employee Bob McKeown (a former SAI employee) to contact then-SAI employee Jimmy Africh to see if he would be interested in joining E&I." ECF 67 at ¶¶ 84, 86.

Wolfram's conduct alone, however, is irrelevant to our evaluation of whether E&I had sufficient minimum contacts to the state of Illinois such that the litigation of this case in this court would not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. "Only intentional contacts *by the defendant* with the forum jurisdiction can support specific jurisdiction." *Noboa*, 812 F.3d at 572 (emphasis added).

SAI presents the following two stand-alone sentences under the "Legal Standard" section of its response brief: "Finally, 'the forum-related activities of an agent … are imputable to the principal and are counted as the principal's contacts for jurisdictional purposes.' *See* [*ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008)]. Moreover, the Illinois long-arm statute expressly authorizes personal jurisdiction for acts committed 'through an agent[.]' 735 ILCS 5/2-209(a)." ECF 88 at 7. These two sentences insinuate that SAI will make an argument that Wolfram's

---

[2] Moreover, the contact with the forum state must be intentional. The circumstances outlined in the complaint hardly suggest that this misdirected call was an intentional contact with Illinois.

contacts with the forum state Illinois can be imputed to E&I. However, unlike the plaintiff in *ABN AMRO*, SAI has *not* presented any evidence that Wolfram was acting as an agent of E&I, and therefore, unlike the Court in *ABN AMRO*, this Court finds that plaintiff has not met its burden of showing a *prima facie* case of agency. See *ABN AMRO*, 595 F. Supp. 2d at 827. SAI's actions in opposing E&I's motion to dismiss are more akin to those of plaintiff in *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691 (N.D. Ill. 2017). The Court in *Mission Measurement* explained: "Mission Measurement argues that Vista Management's conduct can be imputed to the two Vista funds named as Defendants in this lawsuit. Mission Measurement, however, does not develop this argument nor support it with legal authority. As such, Mission Measurement has failed to establish personal jurisdiction over the Vista funds." *Measurement Corp.*, 287 F. Supp. 3d at 711 (citing M.*G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")). Similarly here, in the instant case, SAI did not develop a case of agency, thus this argument is waived.

### B. Directed/Encouraged Wolfram to Obtain and Disclose to it Confidential and Proprietary Information Located in Illinois

SAI claims that E&I "purposefully directed its activities to Illinois when it directed and/or encouraged Wolfram to obtain and disclose to it confidential and proprietary information related to SAI's double stack design… and SAI's proprietary technical, cost and pricing information… as this information was and continues to be located… on a secured server… in Illinois." ECF 88 at 9.

In its Second Amended Complaint, SAI claims that Wolfram "traveled to E&I manufacturing facility" to meet with E&I representatives in February 2020, and in preparation for this meeting, Wolfram was informed that "E&I would conduct an 'in depth review' of E&I's 'offering and go over double stack design potential as well.'" ECF 68 at ¶¶ 31-33. According to the complaint, prior to the meeting, "E&I's CEO requested SAI's proprietary information on the double stack design, including sensitive technical, cost, and pricing information… [and] also asked that Wolfram arrive to the meeting prepared to tell E&I the 'norms' that would allow E&I to 'win business' in the United States market." *Id.* at ¶¶ 36-37. SAI's claim that E&I requested Wolfram share information to allow E&I to "win business *in the United States market*" is too broad for SAI to claim E&I purposefully directed its activities at Illinois.[3]

The sole direct connection to Illinois with respect to this alleged conduct is the fact that the information E&I encouraged Wolfram to disclose to E&I is housed on computer servers located in Illinois. In evaluating this contact, we keep in mind the Seventh Circuit's caution that, "although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004). "For a State to

---

[3] Additionally, the February 2020 meeting between Wolfram and E&I appears to have occurred in South Carolina. As E&I states in its reply brief, "E&I's manufacturing facility is in Anderson, South Carolina." ECF 92 at 6. The meeting's location in South Carolina is further corroborated by an email communication between Wolfram, Phillip O'Doherty, E&I's CEO, and Dave Genson, E&I's national sales director, ECF 88, Exhibit 2 at E-I_000886, and the text message communication on January 31, 2020 between Genson and Wolfram preparing for the meeting in which Wolfram asks, "staying in GSP or Anderson?" and Genson replies, "Gsp – same hotel as last time," ECF 88, Exhibit 2 at E-I_014269. GSP presumably refers to Greenville-Spartanburg International Airport in South Carolina. More directly, SAI does not allege that this meeting occurred in Illinois, which for present purposes is the controlling consideration.

exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State… the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State. *Walden*, 571 U.S. at 284 (citing *Burger King Corp.*, 471 U.S. at 475). Likewise, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 277.

With regard to the sufficiency of the contact with the forum state via the location of the servers, this Court finds the Court's reasoning in *Tower Commc'ns Expert, LLC v. TSC Constr. LLC*, No. 18 C 2903, 2018 WL 5624268 (N.D. Ill. Oct. 30, 2018), compelling. In *Tower Commc'ns Expert, LLC*, the Court found the location of the computerized files in Illinois spoke to plaintiff's conduct as to data storage, rather than defendant's conduct, which was the relevant inquiry. *Id.* at *10 (citing *Walden*, 571 U.S. at 291 (observing that although "some of the cash seized in Georgia 'originated' in Nevada, … that attenuated connection was not created by the petitioner")). Like the Court found in *Tower Commc'ns Expert, LLC*, we find E&I's alleged directing of Wolfram to disclose SAI information located on computer servers in Illinois is too attenuated for the Court to exercise personal jurisdiction over E&I. *See Tower Commc'ns Expert, LLC*, No. 18 C 2903, 2018 WL 5624268, at *10 ("Plaintiff's remaining arguments – that TSC allegedly received unspecified 'files' from Plaintiff stored on an Illinois computer and solicited Plaintiff's employees and contractors that were subject to agreements governed by Illinois law – are based on contacts that are too attenuated for the Court to exercise personal jurisdiction over TSC.").

Unlike *Tower Commc'ns Expert, LLC*, even though the content of the information sought by E&I may be related to the lawsuit, the relevant contacts "are those that center on the relations among the *defendant*, *the forum*, *and* the litigation." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (emphasis added). Even though SAI is an Illinois company and stored the information on its servers in Illinois, in order for this Court to exercise personal jurisdiction over E&I consistent with due process, *E&I's conduct* must have created its own sufficient contacts with Illinois. *See Tower Commc'ns Expert, LLC*, No. 18 C 2903, 2018 WL 5624268, at *10 ("That Plaintiff is an 'Illinois company,' is… insufficient on its own to establish personal jurisdiction over TSC for its alleged tortious conduct."). Thus, the Court finds this alleged conduct by E&I insufficient to exercise jurisdiction over E&I consistent with due process standards.

### C. Communications with Wolfram While He Was in Illinois

SAI claims "E&I intentionally directed its activities to Illinois when it called, texted and emailed Wolfram when he was in Illinois in 2019 and 2020. (Compl. at ¶ 70). For example, E&I's national sales director, Genson, sent Wolfram several text messages on May 28, 2020… [and] Genson knew that Wolfram was in Illinois and at SAI's Franklin Park office that day." ECF 88 at 10. Further, SAI claims that Wolfram "worked out of or in conjunction with SAI's Illinois [sic] approximately 4-5 days a week in 2019 and 2020." ECF 88 at 10.

Regardless, whether Wolfram was physically located in Illinois at the time that E&I's national sales director contacted him is immaterial in the minimum contacts analysis. As the Seventh Circuit instructs, "it is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be 'with the forum State itself, not … with persons who reside there." *Philos Techs., Inc.*, 802 F.3d at 913 (quoting *Walden* 571 U.S. at 284) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not

based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (quoting *Burger King*, 471 U.S. at 475).

Furthermore, the contents of the cited text communications on May 28, 2020 between E&I's national sales director and Wolfram are not at all suit-related.[4] These communications are completely unrelated to allegations of tortious interference with contract (count V) and misappropriation of trade secrets in violation of the Illinois Trade Secrets Act (count IV) against E&I in this case, and therefore, this Court cannot exercise specific personal jurisdiction over E&I on these grounds. "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation… crucially, not just any contacts will do: 'For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. 277 at 284) (emphasis added).

### D. Directed/Encouraged Wolfram to Share with it SAI's Confidential Information Regarding SAI's proposal for the Stack Portland Project

Finally, SAI claims "E&I intentionally focused its activities on Illinois when it directed and/or encouraged Wolfram to share with it SAI's confidential information regarding the specifics of SAI's proposal for the Stack Portland Project." ECF 88 at 10. SAI acknowledges that this project "was located in Oregon" but claims that "in conjunction with that project, the bidders, including E&I, negotiated a Master Services and Product Purchase Agreement with Stack that explicitly called for certain business to be conducted in Illinois." *Id.* at 11. In support of its claim, plaintiff cites to the allegations in its Second Amended Complaint involving only Wolfram's actions with regard to the Oregon project. For example, SAI alleges that "[i]n April 2020, SAI received another RFP from Stack for a data center in Portland, Oregon… SAI submitted its proposal for the Stack Portland Project in or about May 2020… Wolfram reviewed and had knowledge of SAI's proposal for the Stack Portland Project… Wolfram shared SAI's Confidential Information with E&I during the recruitment process and while still employed by SAI, including the specifics of SAI's proposals for the… Stack Portland Project… [and] Wolfram was instrumental in E&I obtaining the Stack Portland Project by, directly or indirectly, soliciting, contacting, or otherwise servicing Stack on behalf of E&I and using or relying upon the Confidential Information, including SAI's pricing and structure for the Portland Stack Project." ECF 67 at ¶¶ 59-62, 73, 109. As explained above, SAI's failure to develop a case of agency waived any potential argument that Wolfram's contacts with Illinois can be imputed to E&I. *See Mission Measurement Corp.*, 287 F. Supp. 3d at 711; *G. Skinner & Assocs. Ins. Agency, Inc.*, 845 F.3d at 321. Because "relevant contacts are those that center on the relations among the *defendant*, the forum, and the litigation," this alleged conduct of Wolfram is insufficient to form the basis this Court having personal jurisdiction over defendant E&I. *Walden*, 571 U.S. at 291 (emphasis added).

Not only did SAI fail to make a case for E&I's conduct, but even if true, the alleged conduct is unrelated to Illinois. SAI suggests that the agreement entered into by E&I required work to be done in Illinois but fails to point to any specific language in the contract to support this contention.

---

[4] For example, Genson texted Wolfram, "Good luck today!" on the day that Wolfram advised Genson he was "going down to SAI to close up shop." ECF 88, Exhibit 3 at 1. On that day, Genson also texted Wolfram, "Computer, Demo Kit shipping today. You'll have by Monday," asked if Wolfram got "the call invite," and texted "it would be great" if Wolfram would be able to send the "top ten list" before the call. *Id.*

Upon review of the Master Services and Product Purchase Agreement with Stack, the Court does not find that it "explicitly called for certain business to be conducted in Illinois" as SAI alleges. *See* ECF 88 at 10; Exhibit 3. At this stage of the minimum contacts analysis, we must determine whether E&I has "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Felland*, 682 F.3d at 673. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475. Even if the contract did call for certain business to be conducted in Illinois, this would not be a suit-related contact forming the basis of claims for tortious interference with contract (count V) and misappropriation of trade secrets (count IV) against E&I, as required for specific personal jurisdiction. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801. This alleged contact with Illinois would be far too attenuated to establish specific personal jurisdiction over E&I.

Therefore, for all the reasons explained above, the Court disagrees with plaintiff that "E&I had *substantial, suit-related* contacts with Illinois," and "E&I's contacts with Illinois form *the basis* of… claims for tortious interference with contract (count V) and misappropriation of trade secrets (count IV) against E&I." ECF 88 at 11-12 (Emphasis added).

    *2. SAI's Alleged Injury Did Not Arise Out of E&I's Forum-Related Activities*

To establish specific personal jurisdiction over an out-of-state defendant, "the alleged injury must have arisen from the defendant's forum-related activities" *Felland*, 682 F.3d at 673. SAI claims that "in light of the harm suffered in Illinois by Illinois resident SAI because of E&I's Illinois-directed activity, there is no unfairness in subjecting E&I to specific jurisdiction in Illinois." ECF 88 at 12. More specifically in relation to the alleged harm suffered, in its Second Amended Complaint, SAI claims that "as a result of E&I's actions, SAI has and will continue to suffer lost business opportunities, customers, profits, and goodwill," ECF 67 at ¶ 162, and "E&I's misappropriation of SAI's Confidential Information has harmed SAI by diverting or threatening to divert business away from SAI," ECF 67 at ¶ 172.

SAI's claim that harm incurred in Illinois is a basis for jurisdiction over E&I is similar to the argument rejected by the Seventh Circuit in *J.S.T. Corp.*, 965 F.3d at 577. The plaintiff corporation argued the third element of trade secret misappropriation, "the owner of the trade secret was damaged by the misappropriation," was satisfied in Illinois and claimed, "a state in which an element of a tort is satisfied necessarily has a close relationship to the litigation concerning that tort." *J.S.T. Corp.*, 965 F.3d at 577 (referencing *Liebert Corp. v. Mazur*, 827 N.E. 909, 925 (Ill. App. Ct. 2005)). However, as the Seventh Circuit reasoned, the plaintiff's "focus on the damages element is in tension with the admonition in *Walden* that 'it is the *defendant's* conduct,' not the plaintiff's injury, 'that must form the necessary connection with the forum State.'" *Id.* (citing *Walden*, 571 U.S. at 285) (emphasis added). The Seventh Circuit is clear that "there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical Ordnance Sys.*, 751 at 802 (citing *Walden*, 571 U.S. at 285).

The Court continued that it "consider[s] the elements of the underlying tort for the light that they cast on 'the relationship between the defendant, the forum, and the litigation' (*Walden*, 571 U.S. at 291)… [and in] that inquiry [its] core focus is always on the defendants' conduct, not the plaintiff's damages." *J.S.T. Corp.*, 965 F.3d 577-78. We agree, that just like J.S.T., SAI "has framed the issue

incorrectly… the fact that damages are an element of the alleged tort does not necessarily mean that personal jurisdiction exists in any state where that element is satisfied." *Id.* When we put the focus where it should be, on E&I's conduct, it becomes clear why SAI's argument fails. *See Id.* ("When we put the focus where it should be—on defendants' conduct—it becomes clear why J.S.T.'s argument fails."). As explained above, *E&I's alleged suit-related contacts* with Illinois are insufficient to establish minimum contacts to the state of Illinois such that the litigation of this case in this court would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. Accordingly, the Court does not find that E&I's contacts with Illinois are sufficient to establish specific personal jurisdiction.

   3. *The Exercise of This Court's Jurisdiction Over E&I Does Not Comport with Traditional Notions of Fair Play and Substantial Justice*

Viewing the record as a whole, the Court concludes that exercising jurisdiction over E&I would offend traditional notions of fair play and substantial justice.

E&I is a South Carolina corporation with its United States headquarters located in Anderson, South Carolina. ECF 67 at ¶ 14. Furthermore, E&I is not registered to do business in Illinois, does not maintain any type of facility, production or otherwise, in Illinois, has no mailing address in Illinois, owns no real or personal property in Illinois, has no ownership interest in any entity incorporated or located in Illinois, and no person with an ownership interest in E&I is located in Illinois. ECF 78, Exhibit A at ¶¶ 6-9, 13-14. E&I has only one employee located in Illinois who works remotely from his home. *Id.* at ¶ 10.

These facts, combined with the Court's determination that the alleged suit-related contacts E&I has with Illinois are either non-existent or too attenuated, lead the Court to conclude that E&I could not have reasonably anticipated being haled into court in Illinois. *See Brook v.* McCormley, 873 F.3d 549, 552 ("[T]here must be sufficient minimum contacts such that [the defendant] 'should reasonably anticipate being held into court there.'") (quoting Burger *King Corp.*, 471 U.S. at 474).

The burden on E&I to litigate this case in Illinois would be significant, and it would not be efficient or in the interest of Illinois to have this case involving conduct that almost exclusively occurred outside of Illinois to be litigated in Illinois. *See Labtest Intern., Inc. v. Centre Testing Intern. Corp.*, 766 F.Supp.2d 854, 864 (N.D. Ill. 2011); *See also Horizon Matrix, LLC v. Whalehaven Capital Fund, Ltd.*, No. 11 C 2655, 2012 WL 379601, at *5 (N.D. Ill. Feb. 3, 2012) (noting that "Illinois does have a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries," but dismissing for lack of personal jurisdiction because "Defendants could not reasonably anticipate being haled into court" in Illinois). SAI has failed to meet its burden by making out a *prima facie* case that this court has personal jurisdiction over E&I. Accordingly, the Court grants E&I's motion to dismiss for lack of personal jurisdiction.

**Conclusion**

For the reasons set forth above, the Court grants E&I's motion to dismiss for lack of personal jurisdiction [78]. The complaint against Defendant E&I is dismissed without prejudice.

**SO ORDERED.**  **ENTERED: May 19, 2022**

**M. David Weisman**
**United States Magistrate Judge**