**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Switchboard Apparatus, Inc., d/b/a SAI Advanced Power Solutions, Inc., | ) | |
| Plaintiff, | ) | No. 1:21-cv-01665 |
| v. | ) | Judge Jorge L. Alonso |
| Shane Wolfram, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Switchboard Apparatus, Inc., d/b/a SAI Advanced Power Solutions, Inc. ("Switchboard") filed suit against Defendant Shane Wolfram for breach of contract. Defendant now moves for judgment on the pleadings and, in the alternative, moves to exclude certain evidence. For the reasons discussed below, Defendant's motion is denied.

**Summary of the Relevant Allegations**

Defendant was employed by Plaintiff as its U.S. Vice President of Sales between August 2011 and May 2020. ECF 148 at ¶¶ 3, 15. On or about July 25, 2012, Plaintiff and Defendant entered into a Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Non-Solicitation Agreement") whereby Defendant agreed, among other things, following the termination of his employment with Plaintiff: (a) not to be employed by a direct competitor of Plaintiff and engage in similar duties and services; (b) not to solicit, service or have contact with any entity that is a top ten revenue-producing client of Plaintiff; (c) not to use or disclose any confidential information obtained during the course of his employment with Plaintiff and to use his best efforts to safeguard such information; and (d) not to solicit, encourage or have contact

with any of Plaintiff's employees for the purpose of encouraging them to leave their employment with Plaintiff and to join Defendant at a competitor. *Id*. at ¶¶ 21-24.

Pertinent here, the Non-Solicitation Agreement provides that "I, Shane Wolfram, hereby enter into this [Agreement] with SAI Advanced Power Solutions, Inc. (the 'Company')." ECF 148-1 at 2. The Non-Solicitation Agreement is signed by Wolfram and "SAI Advanced Power Solutions Inc." *Id*. at 6. Paragraph 1 of the Non-Solicitation Agreement, which prohibits Wolfram from disclosing "Confidential Information," defines "Confidential Information" as: "[A]ny and all information disclosed to or known by me as a consequence of or through my employment with the Company, which is not generally known outside the Company, relating to the Company's business in the electrical distribution equipment industry . . . which I may have previously acquired, accessed or developed or which I may subsequently acquire, have access to or develop in connection with or as a result of my employment with the Company." *Id*. at ¶ 1. Paragraph 2(c) of the Non-Solicitation Agreement, which prohibits Wolfram from soliciting Plaintiff's clients, provides that: "during my employment and for a period of six (6) months following my termination of employment with the Company (for any reason), I will not directly or indirectly solicit, service, have contact with, or divert any entity which is a client of the Company and among the top ten revenue producing client accounts for the period of the last twelve (12) months of my employment of SAI." *Id*. at ¶ 2(c).

On May 15, 2020, Defendant tendered a notice of resignation and, shortly thereafter, informed Plaintiff that his new employer was a direct competitor. *See* ECF 148 at ¶¶ 55, 57. Defendant and Plaintiff then entered into a separation agreement (the "Separation Agreement"), whereby Plaintiff agreed to waive its objection to Defendant working for a direct competitor provided that Defendant abide by the Non-Solicitation Agreement. *Id*. at ¶ 59. Pertinent here, the

subject line of the memo containing the Separation Agreement reads "Terms of Separation for Shane Wolfram from SAI Advanced Power Solutions." ECF 148-2 at 2. The Separation Agreement further states that "[t]he Company agrees to waive its objection to Shane departing SAI . . ." The Separation Agreement is signed by Wolfram and "SAI Advanced Power Solutions." *Id*. at 3. The Separation Agreement further identifies ten clients pursuant to Paragraph 2(c) of the Non-Solicitation Agreement. *Id*. at 2.

Plaintiff alleges that Defendant breached these agreements by colluding with his new employer to impermissibly use Plaintiff's confidential information and solicit its clients and employees. ECF 148 at ¶¶ 61-114.

**Procedural Background**

On December 9, 2020, "SAI Advanced Power Solutions, Inc." filed suit against Defendant in Illinois state court for breach of the employment contracts. *See* ECF 1-1. In its initial pleadings in state court, Plaintiff described itself as "an Illinois corporation with its principal place of business in Franklin Park, Illinois." *Id*. at ¶ 3. Additionally, in another filing, Plaintiff asserted that "SAI Advanced Power Solutions, Inc." ("SAI") is "a non-operating company in Wisconsin," and "Switchboard Apparatus, Inc." is "the operating company in Illinois . . . that operates and does business in Illinois as SAI Advanced Power Solutions, Inc." *Id*. at ¶ 10. Plaintiff additionally asserted that it would seek leave to "correct the misnomer and identify Plaintiff as Switchboard Apparatus, Inc. d/b/a SAI Advanced Power Solutions, Inc." *Id*. at ¶ 11. Defendant, who resides in Wisconsin, then timely removed this action pursuant to 28 U.S.C. § 1441(a) on the basis of complete diversity of citizenship between the parties.

Following removal, Plaintiff amended its pleadings. *See* ECF 10. The amended pleadings identified Plaintiff as "Switchboard Apparatus, Inc. d/b/a SAI Advanced Power Solutions, Inc.

('SAI')." *Id*. at 1. Plaintiff again described itself as "an Illinois corporation with its principal place of business in Franklin Park, Illinois." *Id*. at ¶ 3. Plaintiff's second and third amended complaints state the same allegations. *See* ECF 67; ECF 148.

On July 14, 2026, Plaintiff filed a notice of merger and motion for substitution, joinder, and/or ratification under Federal Rules of Civil Procedure 17(a)(3) and 25(c). *See* ECF 346. In support of its motion, Plaintiff asserted that SAI and Switchboard are distinct corporate entities; that SAI is a corporation organized under the laws of Wisconsin, not Illinois; and that Switchboard is an Illinois corporation. *See* ECF 346; ECF 346-1. Under the terms of the merger agreement between SAI and Switchboard, on April 23, 2026, Switchboard merged into SAI, such that SAI is the surviving entity (the "Merger"). *Id*. In light of the Merger, Plaintiff requested that SAI be joined or substituted for Switchboard, and the Court granted that request. *See* ECF 348.[1]

Defendant now moves for judgment on the pleadings—five years after this action was initiated—on the basis that Plaintiff's pleadings fail to state a claim because: (a) Switchboard has no substantive rights under the Non-Solicitation and Separation Agreements; and (b) the clauses of the Non-Solicitation and Separation Agreements allegedly giving rise to Plaintiff's claims are unenforceable under Illinois law.

**Legal Standard**

"The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing, so the standards for evaluating a Rule 12(b)(6) motion to dismiss also govern a

[1] This Court granted Plaintiff's motion under Federal Rule of Civil Procedure 25(c) having determined that SAI was not an indispensable party to the action under Federal Rule of Civil Procedure 19 such that diversity jurisdiction would be destroyed. *See Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) ("[W]hile it is true that a contracting party is the paradigm of an indispensable party, when a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party." (cleaned up)).

Rule 12(c) motion for judgment on the pleadings." *Muthana v. Mullin*, 171 F.4th 967, 973 (7th Cir. 2026) (internal citations and quotation marks omitted). "Judgment on the pleadings is appropriate if there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law." *Id*. Under Federal Rule of Civil Procedure 8(a)(2), the complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff "need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). In deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), courts must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

**Discussion**

Defendant argues that the Court should grant judgment in his favor because Switchboard's pleadings fail to state a claim capable of relief as: (a) Switchboard does not have substantive rights under the contracts between SAI and Defendant; and (b) the contracts are unenforceable under Illinois law in the first instance. Both arguments fail.

**A. Switchboard's Rights under the Contracts**

Defendant argues that Switchboard has no rights under the contracts between SAI and Defendant, and that Plaintiff fails to state a claim for relief because Switchboard is attempting to recover on its own behalf, not on behalf of SAI. Plaintiff misunderstands the issue Defendant raises as one of "party identity." *See generally* ECF 354. Plaintiff argues that Defendant has waived this issue and, in the alternative, any "technical mismatch between the historical contracting name and

the entity now prosecuting this action," ECF 354 at 12, has been cured by the Merger and substitution. Both of Plaintiff's arguments fail. First, Plaintiff's arguments about Article III and/or prudential standing, capacity under Federal Rule of Civil Procedure 9, and real-party-in-interest under Federal Rule of Civil Procedure 17, *see* ECF 354 at 5-8, do not address the issue Defendant has put at bar. In other words, Defendant argues that Switchboard does not have a *substantive* right to sue; Plaintiff's arguments that Switchboard has a *procedural* and/or *constitutional* right to bring this suit are simply not responsive.

Second, Plaintiff's argument that any issue is cured by the Merger and substitution of parties, *see id*. at 12-14, fails for similar reasons. As Plaintiff points out, under the Illinois Business Corporation Act, when a merger becomes effective, all rights and causes of action of the constituent corporation (Switchboard) vest automatically in the surviving corporation (SAI). *See* 805 ILCS 5/11.50(a)(4)-(5). But if Switchboard never had a substantive right to enforce the underlying contracts, then no such right can vest in SAI. The converse is true as well: if SAI never asserted its substantive right to enforce the underlying contracts, then no such right is automatically exercised by virtue of the Merger. And the substitution of SAI for Switchboard did not resolve the issue either: substitution under Federal Rule of Procedure 25 does not alter the rights or claims asserted by the original party.

Plaintiff further argues that Defendant's motion for judgment on the pleadings must be denied, without reaching the merits, because: (a) the underlying contracts are not part of the pleadings; and (b) the interpretation of those contracts is itself a factual issue. *See* ECF 354 at 8-12. Plaintiff is incorrect on both counts. First, when a written instrument, such as a contract, is attached to the complaint as an exhibit, its provisions become a part of the pleading "for all purposes." Fed. R. Civ. P. 10(c). And where the terms of an attached contract conflict with the

allegations of the complaint, the contract controls. *See Foshee v. Daoust Constr. Co*., 185 F.2d 23, 25 (7th Cir. 1950) ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom."); *see also Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002) (similar). Second, under Illinois law, the interpretation of a contract only becomes a factual issue where the contract is ambiguous, *see Aberdeen Developers, LLC v. Wells Fargo Bank, N.A.*, 177 F.4th 788, 791 (7th Cir. 2026), and the question of whether a contact is ambiguous in the first instance is a question of law, *see Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009).[2] Thus, the Court may reach the merits of Defendant's argument on this motion.

"A contract is ambiguous if it is subject to more than one interpretation. The mere fact that the parties disagree over the contract's interpretation does not suffice to establish ambiguity." *Aberdeen*, 177 F.4th at 791 (citing *Gomez v. Bovis Lend Lease, Inc*., 22 N.E.3d 1, 4 (Ill. App. Ct. 2013)). "A court will consider only reasonable interpretations of the contract language and will not strain to find an ambiguity where none exists." *Id*. (citing *Lease Mgmt. Equip. Corp. v. DFO P'ship*, 910 N.E.2d 709, 716 (Ill. App. Ct. 2009)). Illinois adheres to a "four corners rule" of contract interpretation, which provides that an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 978 (7th Cir. 2005). As such, "[e]xtrinsic evidence cannot be used to create a conflict completely apart from the contract itself." *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 380 (7th Cir. 2000). However, "Illinois recognizes the maxim that a contract will not be interpreted

[2] The parties do not dispute that Illinois state law applies pursuant to the choice of law provision of the Non-Solicitation Agreement. *See* ECF 148-1 at ¶ 10.

literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 119 F.4th 522, 526 (7th Cir. 2024).

The plain language of the contracts here provides that "SAI Advanced Power Solutions Inc." is the corporate signatory, not Switchboard; and the term "Company" is defined only as "SAI Advanced Power Solutions Inc.," not Switchboard. But the literal interpretation of the term "Company" advanced by Defendant—as SAI and SAI alone—would destroy the core purpose of the deals and would deprive "SAI Advanced Power Solutions Inc." of the benefits it bargained for. This is because the complaint alleges that *Switchboard* employed Defendant; *Switchboard* had clients, customers, vendors, and employees; and *Switchboard* had confidential information—not SAI. Plaintiff further argues in its brief that, prior to the Merger, Switchboard was the operating company, while SAI was merely a holding company and did no business. *See* ECF 354 at 7. And, as Defendant himself argues, allegations that he was employed by Switchboard, not SAI, would cause the non-disclosure and non-solicitation covenants—the centerpieces of the underlying contracts—to "fail" in their entirety. *See* ECF 349 at 10-11. Therefore, under the literal interpretation of the contracts, the restrictive covenants would have no effect, whatsoever—an absurd result which would return the parties to their positions before the bargain.

Illinois law does not presume that parties enter contracts which defy common or commercial sense. *See Full Circle*, 119 F.4th at 526. In view of this result, it would not be unreasonable to interpret "Company" as, or to include, Switchboard.[3] And in light of this reasonable alternative interpretation, the Court cannot adopt Defendant's plain-language reading

[3] Another possibility is that the parties did not mean to say "SAI Advanced Power Solutions Inc." at all, and instead meant to identify "Switchboard Apparatus, Inc." as the corporate signatory, and made a mutual mistake in reducing their agreement to writing; but both parties have waived such argument by failing to raise the issue in their pleadings. *See Wheeler-Dealer, Ltd. v. Christ*, 885 N.E.2d 350, 355 (Ill. App. Ct. 2008).

of the contracts, and finds that the term "Company" is ambiguous. *See Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 379 F.Supp.2d 968, 981 (N.D. Ill. 2005) ("[W]here a literal reading of even seemingly unambiguous terms will produce absurd results, at odds with the parties' intent as demonstrated by a reading of the contract as a whole, a literal interpretation will not be used.").[4] For similar reasons, *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc.*, 616 F. Supp. 2d 805 (N.D. Ill. 2009) is distinguishable: in that case, there were no allegations to indicate that an absurd result would flow from the plain language of the contract at issue, and so the court there found that the contract was unambiguous as to the parties' intent. By contrast, here, for example, the complaint alleges, and Defendant admitted, that Defendant "requested that [Switchboard] provide him a list of [Switchboard]'s top ten revenue-producing accounts over the previous twelve months pursuant to Paragraph 2(c) of the Non-Solicitation Agreement." ECF 148 at ¶ 56; *see* ECF 152 at ¶ 56. If this allegation is proven out by the evidence, this would tend to support a finding that the parties intended the term "Company" in the Separation Agreement to refer to Switchboard.

To be sure, this result does not require piercing the corporate veil between SAI and Switchboard; it is rather the opposite. In other words, the reason why the result of a literal reading of the term "Company" as it is used in the contracts is absurd is *because* SAI and Switchboard are distinct corporate entities. Plaintiff's attempts to argue that "[t]he agreements were made with the operating company [Switchboard], not the holding company [SAI]" because the corporations did not observe corporate formalities are unsuccessful and beside the point. ECF 354 at 2. The

[4] Judicial estoppel does not bar this result as the underlying contracts at issue in this case differ from the contract at issue in the *Rockwell* case. *See Levinson v. U.S.*, 969 F.2d 260, 265 (7th Cir. 1992) ("Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. . . It is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. . . [T]he facts at issue should be the same in both cases.").

signatory to the underlying contracts here is unambiguously "SAI Advanced Power Solutions Inc.," not Switchboard, and Plaintiff may not disregard the corporate form to obtain a different result. *See Del Monte*, 616 F. Supp. 2d at 814 (corporation may not enforce a contract simply because its sibling corporation is a signatory). And even if Plaintiff's argument did not violate the principle of corporate separateness, it would not succeed: under Illinois law, "[e]xtrinsic evidence cannot be used to create a conflict completely apart from the contract itself. . . . [T]here must be either contractual language on which to hang the label of ambiguous or some yawning void that cries out for an implied term" *Brooklyn Bagel Boys*, 212 F.3d at 380 (cleaned up). That is to say, the mere fact that SAI and Switchboard did or did not respect the principle of corporate separateness cannot be used to read ambiguity into the contracts at issue here absent a "hook" in the contractual language upon which to hang that ambiguity. Fortunately for Plaintiff, the Court has identified one.

To resolve the ambiguity of the term "Company," the Court must look to extrinsic evidence. *See Davis*, 396 F.3d at 878 ("if the contract is ambiguous . . . then extrinsic and parol evidence is admissible to explain [its] terms. . ."). Therefore this issue is not capable of resolution on this motion and, because this motion cannot at this time be converted to one for summary judgement, must be submitted to the jury. *See Bray v. City of Chicago*, 203 N.E.3d 398, 406 (Ill. App. Ct. 2022) (holding that, although a court determines whether or not a contract is ambiguous as a matter of law, the resolution of any ambiguity is a question of fact that must be decided by a jury) (citing *Pepper Construction Co. v. Transcontinental Insurance Co.*, 673 N.E.2d 1128 (Ill. 1996)); *William Blair & Co. v. FI Liquidation Corp*., 830 N.E.2d 760, 769 (Ill. App. Ct. 2005) (summary judgment is generally inappropriate when the contract term in question is ambiguous, unless the evidence submitted by the parties leaves no genuine issue of material fact in dispute as

to that term). If the ambiguity is resolved in Defendant's favor, then Switchboard has no standing to enforce the contracts, and judgment must be entered in his favor. If the ambiguity is resolved Plaintiff's favor, then Switchboard would undeniably be a third-party beneficiary with enforcement rights, and the case may proceed.

Defendant's motion for judgment on the pleadings is thus denied on this issue, and Defendant's motion in limine is denied.

**B. Enforceability of the Contracts**

Defendant argues that judgment may be additionally granted on the basis that the restrictive covenants of the Non-Solicitation Agreement are not enforceable under Illinois state law as unreasonable restraints on trade. Under Illinois law, the enforceability of a restrictive covenant is a question of law for a court to decide. *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 91 (Ill. 2006). Illinois courts "abhor restraints on trade" and thus disfavor, and closely scrutinize, restrictive covenants in employment contracts. *McInnis v. OAG Motorcycle Ventures*, 35 N.E.3d 1076, 1082 (Ill. App. Ct. 2015); *Health Prof'ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1188 (Ill. App. Ct. 2003). Illinois law permits enforcement of restrictive covenants only where their restraints are reasonable. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011). Illinois courts will find a restraint on trade reasonable if it: (1) is "no greater than is required for the protection of a legitimate business interest of the employer-promisee"; (2) "does not impose undue hardship on the employee"; and (3) is "not injurious to the public." *Id.* at 396.

In support of his arguments, Defendant cherry-picks language from the agreement which, taken alone, would be offending under Illinois law as overbroad; but the restrictions actually provided for by the contract are more limited. Defendant argues that "Confidential Information" is impermissibly defined as any and all information learned through employment that is "not

generally known outside of the Company" relating to the Company's business. ECF 349 at 10-11. But "Confidential Information" is actually limited to information Defendant learned "as a consequence of or through my employment with the Company, which is not generally known outside the Company, relating to the Company's business in the electrical distribution equipment industry." *See* ECF 148-1 at ¶ 1. The Non-Solicitation Agreement thus limits "Confidential Information" in three ways: (a) by source, Defendant's employment with the "Company"; and by subject matter, (b) relating to the "Company's" business in the electrical distribution equipment industry and (c) not generally known to the public. These limitations sufficiently narrow the scope of the restraint. *Contrast with AssuredPartners, Inc. v. Schmitt*, 44 N.E.3d 463, 446 (Ill. App. Ct. 2015) (non-disclosure covenant impermissible where it did not limit knowledge to that gained as a result of employment); *Rubloff Development Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 749 (N.D. Ill. 2012) (similar).

Likewise, Defendant argues that the non-solicitation covenant is overly broad because it restricts all solicitation, contact, and servicing of Plaintiff's clients regardless of purpose. *See* ECF 349 at 11. But such solicitation is in fact limited to the six months following the termination of his employment and to only the "top ten revenue producing client accounts for the period of the last twelve (12) months of my employment of SAI." *See* ECF 148-1 at ¶ 2(c). This sufficiently limits the application of the non-solicitation covenant such that it is a reasonable restraint. *See Lawson Products, Inc. v. Morichelli*, 707 F. Supp. 3d 759, 765 (N.D. Ill. 2023) (holding that scope of non-solicitation agreement was not greater than necessary because "[t]he restriction is limited to eighteen months after the termination of the agreement and only prohibits Morichelli from soliciting customers that he worked with in the last year of his employment at Lawson."); *contrast with Lawrence & Allen, Inc. v. Cambridge Human Resources Group, Inc.*, 685 N.E.2d 434, 441-

42 (Il. App. Ct. 1997) (non-solicitation covenant did not define or limit the term “client” and “fail[ed] to distinguish between past clients, present clients, clients at the time Sheets left plaintiff’s employment, or potential clients”).

Defendant’s motion is denied on this issue.

**Conclusion**

Defendant’s motion for judgment on the pleadings, or, in the alternative, motion in limine, [349] is denied. In light of the fact that this motion raises additional issues for trial, by October 13, 2026, the parties shall submit a joint status report to the Court advising it of next steps in the litigation, including the effect of this order on any pending motions in limine and on the viability of the current trial date.

**SO ORDERED.**

**ENTERED: October 7, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**