**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAI Advanced Power Solutions, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:21-cv-01665 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Shane Wolfram, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff moves to exclude opinions of David Genson; Defendant moves to exclude opinions of Christian Lee and Kevin McElroy. For the reasons discussed below, Plaintiff's motion is granted in part and denied in part; Defendant's motion to exclude the testimony of Lee is denied; and Defendant's motion to exclude the testimony of McElroy is granted in part and denied in part.

## Legal Standard

Federal Rule of Evidence 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, or education may testify . . . if": "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." It is the Court's responsibility to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "[W]here such testimony's factual basis, data, principles, methods or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of

[the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (alteration in original) (quoting *Daubert*, 509 U.S. at 592). Specifically, the Court must "determine whether the expert is qualified in the relevant field," "examine the methodology the expert has used," and "consider whether the testimony will assist the trier of fact." *Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000) (citing *Kumho*, 526 U.S. at 153). "The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." *Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1364 (Fed. Cir. 2008).

## Discussion

### A. Christian Lee

Christian Lee is offered by Plaintiff as an expert witness on the standard of care for a national sales director of a switchgear company. ECF 271 at 5. In particular, Lee's testimony is intended to "provide the factfinder with insight and information regarding the customs and practices in the switchgear industry, the typical sales process for data center customers, the role of and knowledge typically possessed by a national sales director of a switchgear company[,] and the harm that a switchgear company will suffer if their national sales director wrongfully discloses confidential and proprietary information to a competitor." *Id*. at 8.

Defendant argues that Lee's opinions are not based on sufficient facts or data because they rely solely on his experience as a national *account manager*, a role fundamentally different from that of a national *sales director*. *See id.* at 10-14. Defendant highlights a number of distinctions between the two roles: Lee did not have direct reports, Lee was only responsible for managing a small number of customer reports, and Lee's commission structure was not tied to the sales of his direct reports. *Id.* at 17. Defendant argues that these distinctions reflect a fundamental difference

between the two roles: "National Sales Directors are responsible for driving overall sales growth through their leadership and management of a sales team, while National Account Managers typically earn commissions based solely on their own sales efforts to a small number of customers." *Id*. But it's not clear that these distinctions are meaningful.[1] For one, Plaintiff points out that there is no evidence that Wolfram's compensation was tied to the sales of his sole direct report. *See* ECF 285 at 11. Additionally, it is not evident that these distinctions have any bearing on at least three of the four topics on which Lee proposes to opine; for example, Defendant insists that there are material differences between the standards of care for the two roles, but does not articulate one. *See* ECF 271 at 18. And "[a] lack of specialization does not affect the admissibility of the opinion, only its weight." *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1113 (N.D. Ill. 2005); *see also Leibfried v. Caterpillar, Inc.*, 701 F. Supp. 3d 774, 778 (E.D. Wis. 2023) ("[A]n expert need not have experience answering the precise question presented to be qualified as an expert).

Defendant's more compelling argument is that "extrapolating from personal experience is not an objective or replicable methodology." *Amari Co., Inc. v. Burgess*, 2012 WL 5389787, at *16 (N.D. Ill. Nov. 2, 2012).[2] "Rule 702 does require . . . that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). In *Metavante*, the Seventh Circuit held that such "methodologies and principles" could mean "the usual business practice" as observed

[1] For this reason, Defendant's criticisms of Lee apply with equal force to Defendant's expert, David Genson.

[2] Defendant's citations to *Chapman* and *Dhillon* are inapt, as those cases concerned witnesses put forth as *scientific* experts. *See Chapman v. Maytag Corp*., 297 F.3d 682, 687-88 (7th Cir. 2002); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869-70 (7th Cir. 2001). Under Federal Rule of Evidence 702, "specialized knowledge," which may be attained through personal experience, is a basis for admission separate and apart from "scientific" or "technical" knowledge. *Chapman* and *Dhillon* instead stand for the principle that reliance on mere personal observation cannot support a scientific theory.

through "experience in the industry." *Id*. The question here, then, is whether Lee's experience successfully crosses the line from simply firsthand knowledge of how his job is performed (*Amari*) to specialized knowledge about industry standards and/or usual business practice (*Metavante*).

Plaintiff cites to *Federal Ins. Co. v. Arthur Andersen, LLP*, 2006 WL 6555232 (N.D. Ill. Jan. 18, 2006), but Lee's experience is distinct from that of the expert there, who had "worked in the insurance industry in various capacities for almost forty . . . years and is a certified property casualty underwriter and a registered professional liability underwriter." *Id.* at *2. Lee has spent his executive career at a single company and does not assert that there exist any external regulating bodies for the switchgear industry. But it cannot be said that Lee's experience is not "extensive hands-on experience over a meaningful period of time during which a person develops a working expertise in a certain area." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 724 (7th Cir. 1999). Lee has had experience with over 200 sales/bid processes, which are client driven. *See* ECF 271-1 at 5, 8. Additionally, Lee has had occasion to observe the precautions switchgear companies take to protect their confidential and proprietary information through his employment with at least two switchgear companies. *Id*. at 10-11.

Defendant argues that Lee was "not aware of any industry standards" and did not "rely" on "industry standards" in formulating his opinion. ECF 288 at 2-3. But this does not appear to be a fair characterization of Lee's deposition testimony. In particular, the questioning attorney introduced and utilized the phrase "industry standards" to mean *written* industry standards:

> Q. Okay. Are there any written industry standards or textbooks that you relied on in formulating your opinion?
>
> A. The opinions are based on my years of experience so that was the primary I guess resource that I relied on.
>
> Q. Sure, but did you rely on any written sources, textbooks, treatises, industry standards?

A. I'm not aware of any industry standards for anything.

Q. So you didn't rely on them?

A. Correct.

ECF 271 at 12. Defendant attempts to save his argument by asserting that Lee does not identify any *unwritten* industry standards; this does not prove out.

However, that Lee's knowledge may be specialized does not automatically mean that it is helpful to the jury. Defendant argues that Lee's testimony fails to assist the jury in understanding a complex or technical matter outside its grasp. Defendant does not contest that expert testimony as to the responsibilities or standard of care of a national sales director in the switchgear industry is not necessary at all; indeed, Defendant has offered its own expert witness to opine on the same topics. Rather, Defendant argues that Lee's opinion is not specific to the switchgear industry. *See* ECF 271 at 19. Defendant's argument appears to stem from deposition testimony where Defendant's counsel asked Lee about differences in the role of a national sales director in the switchgear industry and in other industries; Lee stated that he could only speak to the switchgear industry. *See* ECF 271-1 at 20-21 (Lee: "I'm relying on my experience. You know, having not been in other industries, it's hard for me to weigh in, but what I'm saying is based on the switchgear industry and my experience . . ."). Lee's opinion, and deposition testimony, were about the switchgear industry; that Lee could not articulate how the switchgear industry differs from other industries does not alter the substance of his opinion. Plaintiff argues that Lee's testimony will help the jury to understand how the switchgear industry functions and what competitive harm may result when a national sales director discloses confidential information or steers active business to a competitor. ECF 285 at 16. The Seventh Circuit has recognized that standards of care for professional fiduciaries are beyond the common knowledge of a lay jury. *See Hassebrock v.*

*Bernhoft*, 815 F.3d 334, 341-42 (7th Cir. 2016) (applying Illinois law and discussing standards of care for accountants and attorneys in the context of professional negligence claims). While neither party attempts to address whether a national sales director implicates the common-knowledge rule, the Court finds that, in light of Defendant's alleged fiduciary duties, that Lee's testimony will aid the jury.

Additionally, Defendant argues that Lee is not qualified to opine on the standard of care for a national sales director because he only has experience as a national account manager. For the reasons discussed above, this is not compelling. And Defendant's argument that Lee is not qualified to testify because he has "never seen or heard of a situation like this" is unavailing—that the factual circumstances of this case are, in Lee's perspective, extreme, does not diminish his expertise. *See* ECF 288 at 9. Lastly, Defendant argues that Lee's opinions are unreliable because he offered contradictory deposition testimony; however, this goes to weight, not admissibility. *See Livingston v. City of Chicago*, 597 F. Supp. 3d 1215, 1227 (N.D. Ill. 2022) ("[T]o the extent Dr. Davis contradicted himself or provided a different opinion on cross-examination, such arguments go to the weight of his testimony, not its admissibility.") (citing *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony.")).

Defendant's motion to exclude the testimony of Christian Lee is denied.

**B. David Genson**

David Genson, the former national sales manager of E&I Engineering Inc., is Defendant's non-retained expert witness. Plaintiff argues that, as a hybrid fact/expert witness, Genson's testimony must be excluded because he intends to offer opinions based on information learned solely through this litigation. *See* ECF 277 at 1-2. Defendant argues that Genson's proposed

testimony does not exceed the scope of permissible testimony for a non-retained expert witness because he is simply identifying those aspects of Plaintiff's expert's opinions with which he disagrees, based on his personal knowledge and experience. *See* ECF 281 at 6. Federal Rule of Civil Procedure 26(a)(2)(C) permits a party to rely on a witness as an expert without providing a comprehensive expert report. However, a "hybrid fact/expert witnesses . . . must testify from the personal knowledge they gained on the job. That personal knowledge requirement may limit their testimony . . ." *Indianapolis Airport Authority v. Travelers Property Casualty Co. of America*, 849 F.3d 355, 371 (7th Cir. 2017). Even so, such a witness may "testify regarding facts that may contradict the facts underlying [the opposing] experts' opinions . . . These witnesses may also identify those aspects of [the] opinions with which they disagree, provided that their disagreement is factual in nature and arises from their experience . . . (as opposed to information they learned solely . . . in litigation)." *Id.*

Certain of Genson's opinions, as first drafted, clearly exceeded the scope of Rule 26(a)(2)(C). For example, Genson proposed to testify that "there is no indication in any of the documents or testimony of any witnesses with personal knowledge of the interactions between Shane Wolfram and E&I that Shane Wolfram ever shared any of SAI's . . . confidential or proprietary information to anyone at E&I." ECF 277 at 7 (Genson Opinion No. 4). Such testimony would be improper under *Indianapolis Airport Authority* insofar as Genson purported to testify based on documents or testimony of witnesses other than himself. Genson's proposed testimony that "[t]here is no indication that SAI attempted to perform any forensic analysis of the phone to determine whether the personal communications could be restored" would likewise be improper. *Id.* at 8 (Genson Opinion No. 11). Such an opinion concerning litigation conduct could only be based on information learned solely through litigation. However, Genson submitted amended

opinions with significantly alter the scope of his opinions. For instance, Opinions Nos. 4 and 11 now are limited to communications to or from Genson. *See* ECF 281-1 at ¶¶ 4, 11. Therefore, these objections now properly stem from Genson's direct involvement with the events giving rise to this action.

Plaintiff maintains that its objections to Genson's initial opinions apply with equal force to certain of his amended opinions. Plaintiff argues that Opinion Nos. 5, 9, 19-20, and 23-26, in which he opines that SAI did not suffer harm as a result of Wolfram's alleged conduct, exceed the scope of permissible testimony because Genson did not work for SAI and could not have personal knowledge to assess whether SAI was harmed. *See* ECF 294 at 7. However, Genson's opinions in these paragraphs are limited to and stem from his personal knowledge. For instance, Genson proposes to testify that, based on his "personal knowledge of the industry, there is no indication that SAI suffered reputational harm, financial losses, and erosion of competitive advantage as a result of any information that Shane Wolfram allegedly shared with E&I regarding SAI." ECF 281-1 at ¶ 9. Plaintiff makes similar arguments regarding Opinion Nos. 6, 8, 11, and 15-16. *See* ECF 294 at 3-4.

At bottom, these arguments concern credibility rather than proper scope under Rule 26(a)(2)(C). For instance, Plaintiff notes that "Genson was not included in the email communications between Wolfram and E&I's CEO . . . Genson was also absent from key meetings during Wolfram's February 2020 visit to E&I's South Carolina facility . . . Additionally, Wolfram and E&I's CEO exchanged test messages throughout the recruitment process, communications from which Genson was likewise excluded." *Id.* at 4. Because of this, Plaintiff argues, "Genson lacks the personal knowledge necessary to credibly opine on whether Wolfram disclosed SAI's confidential information or engaged in other wrongful conduct." *Id.* While these criticisms are

valid, credibility determinations are within the exclusive province of the jury. *See Lapsley v. Xtek, Inc*., 689 F.3d 802, 805 (7th Cir. 2012) ("A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy.").

Lastly, Plaintiff argues that Opinion Nos. 20-22 and 25 are argumentative commentary on the substance and perceived credibility of Plaintiff's expert's opinions, rather than factual disagreements stemming from his personal experience, *see* ECF 294 at 8-9; and that Opinion Nos. 12, 18, and 22 are derived entirely from Genson's post-litigation review of discovery materials rather than firsthand knowledge, *see id*. at 7-8. These characterizations simply do not prove out. However, Plaintiff's argument regarding Opinion No. 14 cannot be similarly disposed of: Genson's objection is grounded, first and foremost, in the fact that the written report is contradicted by the witness's deposition testimony. ECF 281-1 at ¶ 14. While Genson adds in a later sentence that the deposition testimony is "consistent with industry standard for a sales person switching jobs," the thrust of Opinion 14 is to identify contradicting testimony, not to highlight a factual disagreement. *Id.* This invades the province of the jury by attempting to opine on credibility.

Plaintiff's motion to exclude the opinions of David Genson is denied in part, and granted in part.[3] Genson may only offer testimony based on his own personal knowledge and may only express his disagreement with Plaintiff's expert to the extent it stems from fact.

**C. Kevin McElroy**

Kevin McElroy is offered to provide opinions regarding lost profit damages sustained by Plaintiff and Wolfram's unjust enrichment. Defendant makes four arguments as to why McElroy's testimony must be excluded: (1) McElroy's lost profit opinion is not based on reliable data or a

[3] Plaintiff additionally argues that, if its expert, Christian Lee, is excluded on the basis of his lack of qualifications, then Genson should also be disqualified. The Court agrees with the premise of the argument, but for the reasons discussed above, Plaintiff's motion is denied on this issue.

reliable methodology; (2) McElroy's unjust enrichment opinion is misleading; (3) McElroy is proposing to opine on causation, which is beyond the scope of his expertise; and (4) McElroy is not qualified to offer a damages opinion.

**1. Lost Profit**

Defendant argues that McElroy's lost profit opinion must be excluded because: (1) it is not based on reliable data; and (2) is not the result of a reliable methodology. When seeking recovery of lost profits under Illinois law, the lost profits must be established with a reasonable degree of certainty and be traceable to defendant's wrongful conduct. *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc*., 491 F.3d 625, 633 (7th Cir. 2007) (applying Illinois law). In such cases, the claimant bears the burden of establishing the lost profits with "reasonable certainty." *Id*. at 631-32. Although lost profits are prospective in nature and inherently uncertain, a party must provide evidence which establishes a reasonable basis for computing them. *Id*. at 632-33.

First, Defendant's argument concerning the data underlying McElroy's opinion invades the province of the jury insofar as it scrutinizes "the quality of the expert's data and conclusions," as opposed to his methodology. *Manpower, Inc. v. Ins. Co. of Pa*., 732 F.3d 796, 806, 808 (7th Cir. 2013) ("[A]rguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury."). The Court concerns itself with "assessing the reliability of the methodology—the framework—of the expert's analysis," whereas "the reliability of data and assumptions used in applying a methodology" is the jury's concern. *Id*. at 808. Nevertheless, Defendant argues that McElroy's lost profit opinion must be excluded as speculative because he did not rely on independently audited financial statements, and instead based his conclusions on an internal document created by Plaintiff that reflected only a single year of historical financial data. *See* ECF 275 at 11-18.

As an initial matter, it is not clear that McElroy indeed relied *only* on the one spreadsheet. Defendant argues that McElroy "could identify only one document that contained actual cost and profitability data" at his deposition; but McElroy actually testified that "there's a specific document that comes to mind, and it may not be the only one that's responsive to your question . . . my general understanding was that this was the *most reliable* document with data maintained in the normal course of business to perform such a calculation." ECF 295 at 2 & n. 2 (emphasis added); ECF 295-1 at 14.

And it is not clear that the spreadsheet is as problematic as Defendant characterizes it to be. Defendant points to testimony by Plaintiff's 30(b)(6) witness, David Martin, to argue that Plaintiff "may have" misrepresented the fixed or variable nature of some costs in the spreadsheet, and this is the reason why audited financial statements are necessary. ECF 295 at 7-8. But Martin testified that the spreadsheet was "what we rely on for all of our business unit and corporate reporting," ECF 295-2 at 4, and that not all costs increased by volume should be included in trying to figure out what the lost profits would be relative to projects because "[t]hat builds over time" and is not necessarily variable relative to specific projects, *id*. at 14 ("So I don't hire ten new engineers to put on the engineering line because a project comes in or out. That builds over time."). This is distinct from the variable costs at issue in *Sure-Trip*, "defined as those additional costs *necessarily* incurred in performing the contract." *Sure-Trip, Inc. v. Westinghouse Engineering*, 47 F.3d 526, 531-32 (2d Cir. 1995) (emphasis added) (finding that testimony that administrative, insurance, and repair costs would not have been increased by tripling production was "incredible").

For example, in *Autotrol*, to which Defendant also cites, the Seventh Circuit found that "[i]t is more difficult to see how any part of the salary of the engineer in our illustration is a variable cost of the contract. His salary would presumably have been paid, for a time anyway, whether or

not he worked on the [] project or, for that matter, on some substitute project. His salary was an expense but not an expense 'caused' even in part by the project." *Autotrol Corp. v. Continental Water Sys. Corp.*, 918 F.2d 689, 692 (7th Cir. 1990). This would seem to be precisely Martin's point: "instead of just having a static assembly lane where they would work on one project and if . . . that project got held up, they would basically wait for parts, we would move those people to other projects to utilize their time more efficiently." ECF 295-2 at 13. While Defendant's expert may disagree with Plaintiff's categorization of fixed versus variable costs, Defendant has not identified a valid reason to question the reliability of the data on which McElroy relied for purposes of admissibility.

McElroy's opinion simply does not raise the concerns at issue in Defendant's authorities. *Historical* fixed and variable costs are not comparable to *projections* of future sales. *Contrast with Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, 2017 WL 3592775, at *13-14 (N.D. Ill. Aug. 21, 2017) (excluding expert report where it was based on projections of future sales) (citing *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (holding that internal sales projections offered into evidence to prove damages were unreliable and inadmissible because they "represent[ed] hopes rather than the results of scientific analysis")). And that McElroy utilized cost estimates specified in the bids is not itself a ground to exclude his opinion. *See Sys. Develop. Integration, LLC v. Computer Sciences Corp.*, 886 F. Supp. 2d 873, 884 (N.D. Ill. 2012) (reliance on figures in a subcontract permissible because they provided "criteria by which the probable profits can be estimated with reasonable certainty"). And Defendant relies on *Auto Industries* and *Ask Chemicals* to support the proposition that an expert must independently verify all client-provided data, regardless of the substance of that data—but the issue of independent verification was raised in those cases because the damages experts wholesale adopted their clients' *damages*

*estimates*. *See Ask Chemicals, LP v. Computer Packages, Inc.*, 593 Fed. Appx. 506, 510 (6th Cir. 2014) (excluding damages opinion where it was based on "wholesale adoption of Plaintiff's estimates . . ."); *Auto Industries Supplier Employee Stock Ownership Plan (ESOP) v. Snapp Systems, Inc.*, 2008 WL 5383372, at *4-5 (E.D. Mich. Dec. 23, 2008) ("In reality, Frazee had no actual involvement in the calculations of SNAPP's damages components. . . [H]e did not testify that he actually did the analysis for SNAPP's damage calculations, as opposed to merely 'double checking' SNAPP's math and sources at some level."). In any event, Defendant's position sets the threshold for admissibility far higher than what is provided for by *Daubert*.

Second, Defendant argues that McElroy's methodology is unreliable because he did not analyze past performance trends, market conditions, comparable company financials, or but-for economic scenarios. ECF 275 at 24-25. This argument falls flat in the face of the testimony of Defendant's own damages expert, who agreed with McElroy's approach (even if she criticized his reliance on the 2020 spreadsheet). *See* ECF 287-3 at 4-5 ("[S]o hypothetically I'm agreeing with his cost structure, then as far as the revenue minus the saved cost would be the correct methodology. I would agree with that."). Regardless, Defendant's argument fails. Defendant relies on *System Development Integration*; but the court in that case held that the methodology employed—"the present value of [the company's] lost revenues under the [relevant] Agreement minus the incremental expenses that would have been required for [the company] to realize such revenues"—was reliable. *Sys. Develop. Integration*, 886 F. Supp. 2d at 880, 883. And as Plaintiff notes, this is the same methodology employed by McElroy. That McElroy did not perform a cross-check or a "reasonableness test" are valid criticisms, but ones that go to credibility.

**2. Unjust Enrichment**

Defendant further argues that McElroy's opinions regarding unjust enrichment damages are misleading because Plaintiff has not made a claim for unjust enrichment. *See* ECF 275 at 21. However, as this Court has previously held, Plaintiff has asserted a claim under the Illinois Trade Secrets Act, which permits recovery of both actual loss and unjust enrichment. *See Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 945 (7th Cir. 1996). And even if Plaintiff's theory of unjust enrichment is better described as disgorgement in connection with its breach of fiduciary duty claim, McElroy's inclusion of Defendant's income from E&I is not impermissible. In short, Plaintiff's theory is that Defendant obtained his position at E&I, and the associated income paid to him by E&I, as a result of his breach of fiduciary duty to Plaintiff. This is not contrary to law. *See Continental Vineyard LLC v. Dzierzawski*, 2018 WL 11195945, at *2 (N.D. Ill. April 5, 2018) ("The Court could order Dzierzawski to disgorge these amounts of money if the Court were to find that Dzierzawski acquired these amounts as a result of his breach of fiduciary duties.").

Defendant's assertion that disgorgement as a remedy only provides for "disgorgement of property or proceeds that actually belong to the party seeking disgorgement," *see* ECF 275 at 22, is unsupported by legal authority.[4] Indeed, the Illinois Supreme Court in *Indeck* did not hold that a plaintiff could not seek disgorgement of compensation paid by a third party *because* disgorgement is limited only to proceeds belonging to the plaintiff. *Indeck Energy Services, Inc. v. DePodesta*, 183 N.E.3d 746, 761-63 (Ill. 2021). Rather, the Illinois Supreme Court upheld the

[4] Defendant's citations to cases addressing the Securities and Exchange Commission's specific "disgorgement powers" are inapt. *See Sripetch v. SEC*, 608 U.S. 555, 558-61 (2026) (discussing history of SEC's disgorgement powers). Even still, courts have held that disgorgement in enforcement actions may exceed the actual damages to victims, because the goal of the remedy is to prevent the wrongdoer from being unjustly enriched. *See SEC v. Cavanaugh*, 445 F.3d 105, 117 (2d Cir. 2014) (discussing purpose of disgorgement in SEC enforcement context).

lower court's ruling that such compensation could not be disgorged because it was paid after the breach of fiduciary duty ended (a question of fact), and thus the compensation was not tied to the wrongdoing. *Id*. As such, Plaintiff is not barred from seeking disgorgement of Defendant's E&I compensation as a matter of law; this is an issue of fact reserved for the factfinder.

Defendant's motion is denied on this issue.

**3. Causation**

Defendant next argues that, because McElroy was retained to provide an opinion on damages, he may not also opine on causation. Plaintiff does not dispute that McElroy cannot opine on causation. *See* ECF 287 at 21-22; ECF 295 at 11. Defendant also argues that "McElroy assumes the truth of [Plaintiff]'s allegations in its pleadings, making one-sided assumptions about critical facts that are in dispute." ECF 275 at 19. This is a non-starter; McElroy permissibly assumed liability for the purposes of his damages analysis, which necessarily entails assuming the truth of the allegations. *See Sys. Develop. Integration*, 886 F. Supp. 2d at 880, 882 ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion To hold otherwise would be illogical."). However, Defendant argues that McElroy is not just assuming liability, but is impermissibly interpreting the record, including by inserting language and contradicting sworn testimony. *See* ECF 275 at 19-20. This exceeds the scope of McElroy's role as an expert, as there is no indication, and Plaintiff does not argue otherwise, that McElroy's testimony on those portions of the record is necessary to assist the jury. *See Aponte v. City of Chicago*, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony."). McElroy may assume

liability and make references to the factual record, but he may not offer his interpretation of the record or an opinion on causation.

**4. Qualifications**

Lastly, Defendant also argues that McElroy does not have the necessary qualifications. Defendant's argument concerning McElroy's qualifications falls short: McElroy has over 17 years of experience specializing in commercial damages and IP damages, valuation, and commercialization; has offered testimony on damages relating to trade secret misappropriate, breach of contract, and breach of fiduciary duty; has served on the Economics of the Profession Committee for the American Bar Association and on the IP Valuation Instructors Committee for the Licensing Executive Society; and holds an MBA from the University of Chicago, Booth School of Business. ECF 275-1 at ¶¶ 1-3. McElroy also testified that in at least 8-9 cases for which he was retained to issue a report involved the calculation of lost profits. ECF 287 at 27. That McElroy does not possess professional licenses or certifications goes to the weight of his testimony, not admissibility. In any event, Defendant largely abandoned this argument by not addressing Plaintiff's counterarguments in his reply. *See Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) ("Yet because Webb did not respond to this point in his reply brief, he waived any counterarguments he could have raised.").

*　　*　　*

Defendant's motion to exclude the testimony of Kevin McElroy is denied as to lost profits, unjust enrichment, and qualifications, and granted as to causation.

## Conclusion

Plaintiff's motion to exclude the testimony of David Genson [268] is granted in part, denied in part. Defendant's motion to exclude the testimony of Christian Lee [269] is denied. Defendant's motion to exclude the testimony of Kevin McElroy [273] is granted in part, denied in part.

**SO ORDERED.**

**ENTERED: October 16, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**